### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

SAMUEL N. EDEH,

                    Plaintiff, *Pro Se,*

v.

MIDLAND CREDIT MANAGEMENT, INC.,

                    Defendant.

**Civil File No. 09-CV-1706 (PJS/FLN)**

**JURY TRIAL DEMANDED**

### AMENDED COMPLAINT

**COMES NOW** Plaintiff, Samuel N. Edeh, *Pro Se*, in the above styled cause and for his Complaint against Defendant Midland Credit Management, Inc., ("Defendant" or "Midland" hereafter) states as follows:

### PRELIMINARY STATEMENT

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U. S. C. § 1692 *et seq.* ("the FDCPA"), and the California Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1785.26-1788.32 ("the Rosenthal Act") by this Defendant in its illegal efforts to collect a consumer debt from Plaintiff.

### JURISDICTON AND VENUE

2. This Court has original jurisdiction of Plaintiff's claims under 28 U. S. C § 1331 and pursuant to 15 U. S. C. § 1692k(d).

3. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4. This Court may exercise supplemental jurisdiction over the related federal law claim under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U. S. C. 227 *et seq.*, and state law claims arising out of the same nucleus of operative facts which give rise to the FDCPA claims.

5.  Venue is proper in this District because the transactions and occurrences which give rise to this action occurred here, Plaintiff resides here and Defendant transacts business here.

## PARTIES

6.  Plaintiff is a natural person who resides in Olmsted County, Minnesota, and a "consumer" as that term is defined by the FDCPA.

7.  Midland is a Kansas corporation with its principal place of business in the State of California, and at all times relevant to this action was doing business in Minnesota.

8.  Midland is a debt collector as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a consumer debt from Plaintiff.

## FACTUAL ALLEGATIONS

9.  At all times relevant to this action, Plaintiff is informed and believes, and thereon alleges, that Midland conducted business within the State of California and used instrumentalities of interstate commerce such as the United States Mail and telephonic communications in the business of collecting "consumer debts" in Minnesota.

10. Plaintiff's alleged "debt" was money, property, or their equivalent, which was due or owing, or alleged to be due or owing, from a natural person to another person, and was therefore a "debt" as that term is defined by Cal. Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by Cal, Civil Code §1788.2(f).

11. Sometime between February 3, 2004 and November 30, 2006, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. 1692a(5), namely, an HSBC Bank Nevada, N.A. credit card account debt  which was used by Plaintiff for personal, family and household purchases.

12. Due to nonpayment, the account was charged off on November 30, 2006 and sold to

Collect America on December 19, 2006.

13. Sometime thereafter, the debt was consigned, placed or otherwise transferred to Midland for collection from Plaintiff.

14. Upon information and belief, Midland attempted to contact Plaintiff on his cellular telephone ending in 6769 at 12:37 PM Central Standard Time (CST) on December 26, 2008.

15. The caller's identity appeared as "Unavailable" and Plaintiff did not answer the call hoping the unknown caller would leave a message and disclose its identity.

16. The call was transferred to Plaintiff's voicemail but the caller did not leave any message, likely because it was a predictive dialer.

17. It was illegal for Defendant to contact Plaintiff on his cellular telephone because Plaintiff never gave the original creditor, HSBC Bank Nevada, N.A., or Defendant or any other assignee of the account prior express consent to contact Plaintiff on his cellular phone.

18. On December 30, 2008, specifically at 8:31 AM (CST), Midland used an "automatic telephone dialing" system to place a call on Plaintiff's cellular telephone.

19. The caller identity for this call also appeared as "Unavailable."

20. Plaintiff was concerned about this unknown caller who was contacting him on his cellular telephone.

21. When Plaintiff took the call, there was a pause before a live agent of Midland came on.

22. The agent alleged that Plaintiff was indebted to Midland for a certain amount.

23. Plaintiff did not recall any such debt and because there was no provided proof for the debt, Plaintiff disputed any and all allegations of indebtedness, and immediately requested Midland's agent to send him detailed information in the mail regarding the

alleged debt so Plaintiff may ascertain the validity of the debt.

24. That telephone call was the initial communication from Midland.

25. The communication did not contain the notice required by 15 U. S. C § 1692g.

26. Midland did not send Plaintiff the notice required by 15 U. S. C § 1692g within 5 days of the initial telephone call to Plaintiff.

27. On the very same day around 6:00PM (CST), Plaintiff reviewed his Trans Union credit report and noticed that Midland obtained a copy of his credit history in December 2008.

28. Plaintiff immediately faxed a cease and desist letter to Defendant requesting Defendant to withhold further collection activity pending successful verification of the alleged debt.

29. Defendant, in open defiance of Plaintiff's cease and desist letter, proceeded to report the debt to the credit reporting agencies on or about February 13, 2009.

30. Because Plaintiff disputed the debt and Defendant failed to validate, the debt remained non-validated and thus reporting it was deceptive, unfair and continued collection activity in violation of 15 U. S. C § 1692e and 1692g.

31. On or about March 5, 2009, Plaintiff sent a certified letter to Midland notifying Midland that it was in violation of the FDCPA and that it must stop reporting the non-validated debt to the credit reporting agencies.

32. In that letter, which was received and signed for on March 9, 2009 by Midland's agent D. Pierce, Plaintiff requested, among other things, the name and address of the original creditor, the nature of the debt, copies of any documents (contract, loan agreement, etc.) showing that he agreed to pay such obligation, proof of his responsibility on this debt including billing statements, as well as any and all payments made on the debt.

33. Again, Midland ignored Plaintiff's validation request and did not provide any form of verification whatsoever.

34. Meanwhile, Defendant caused the debt to remain on plaintiff's credit reports.

35. On April 13, 2009, Plaintiff sent Midland certified mail in which he once again put Midland on notice that it was in violation of the FDCPA.

36. In that mail, Plaintiff requested Midland to remove the debt from his credit reports and to stop further collection activity, such as reporting or verifying the debt to the credit bureaus.

37. By May 6, 2009, Plaintiff had disputed the debt with the credit reporting agencies at least ten (10) times and Midland verified the debt to the credit reporting agencies.

38. Midland's verifying the non-validated debt to one or more credit reporting agencies constituted continued collection activity in violation of 15 U. S. C § 1692g.

39. In further goodwill effort to resolve this matter, despite Defendant's repeated violations, Plaintiff faxed a demand letter to Defendant on May 11, 2009.

40. The letter provided Midland an opportunity to resolve the matter by removing the debt from Plaintiff's credit reports within 5 days and by providing an affidavit affirming that the debt would not be reported again on Plaintiff's credit reports and that it would not be transferred or reassigned to another party(ies).

41. On May 13, 2009, Plaintiff noticed that Midland promptly deleted the debt from his credit reports with all three credit reporting agencies as requested.

42. However, Midland failed to provide requested affidavit which would have ensured complete and satisfactory resolution of this matter.

43. Defendant repeatedly ignored or undermined Plaintiff's goodwill efforts to permanently resolve this matter.

### *Summary*

44. On December 26, 2008, Midland caused a call to be placed on Plaintiff's cellular telephone without meaningful disclosure of the caller's identity in violation of 15 U. S. C § 1692d(6)

45. Midland's initial telephone communication on December 30, 2008 did not contain the notice required by 15 U. S. C § 1692g.

46. Midland did not send Plaintiff the notice required by 15 U. S. C § 1692g within 5 days of the initial telephone call to Plaintiff.

47. Defendant violated 15 U.S.C. §§ 1692e and 1692g by reporting the debt to the credit reporting agencies after debt validation was requested and not provided.

48. Defendant violated 15 U.S.C. §§ 1692c(c) and 1692g(b) on multiple occasions by verifying the non-validated debt to one or more consumer reporting agencies.

49. Verifying the debt to the consumer reporting agencies constituted further collection activity as well as continued communication to Plaintiff both of which are prohibited under 15 U.S.C. §§ 1692c(c) and 1692g(b).

50. Midland's actions of ignoring Plaintiff's validation requests and reporting and repeatedly verifying the non-validated debt to the credit reporting agencies was unfair and manipulative, and it caused Plaintiff enormous stress and anguish because of the emotionally abusive manner in which it was done.

51. All of the above-described collection communications made to Plaintiff by Defendant were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(c),1692d, 1692d(6), 1692e and 1692g amongst others.

52. All of the above-described collection communications made to Plaintiff by Defendant were made in violation of Cal. Civ. Code § 1788.17.

53. The above-detailed conduct by Defendant of harassing Plaintiff in an effort to collect on this debt was a violation of numerous and multiple provisions of the FDCPA and the Rosenthal Act, including but not limited to all of the above mentioned provisions of the

FDCPA and the Rosenthal Act, and was the direct and proximate cause of severe
emotional distress on the part of Plaintiff.

54. Plaintiff has suffered actual damages as a result of these illegal collection communications
by Midland in the form of anxiety, emotional distress, frustration, upset, humiliation, and
sleeplessness amongst others.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as
though fully stated herein.

56. At all relevant times Defendant regularly engaged in the practice of collecting debts for
itself or on behalf of other individuals, and is therefore a "debt collector" under the
FDCPA.

57. At all times relevant to this complaint, Midland sought to collect a "consumer" debt from
Plaintiff.

58. All of the above-described collection communications made to Plaintiff by Defendant
were deliberately made in violation of numerous provisions of the FDCPA, including
but not limited to 15 U.S.C. §§ 1692c(c), 1692d, 1692d(6), 1692e and 1692g amongst
others.

59. All actions taken by Defendant were done with malice, were done willfully, recklessly
and/or were done with either the desire to harm Plaintiff and/or with the knowledge
that its actions would very likely harm Plaintiff and/or that its actions were taken in
violation of the FDCPA and/or that Defendant knew or should have known that its

actions were in reckless disregard of the FDCPA.

60. Plaintiff specifically notified Defendant about its violations on three different occasions but Defendant ignored the notices and instead continued its illegal course.

61. Defendant has been sued in the past because of these identical misconducts.

62. Defendant is therefore subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

63. Plaintiff has suffered and continues to suffer damages as a result of these violations.

64. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

## COUNT II.

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

### California Civil Code §§ 1785.26-1788.30

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. Defendant violated Cal. Civ. Code § 1785.26 which requires debt collectors who report information regarding a debtor to a credit reporting agency to notify the debtor either before the debt collector reports credit information or within 30 days after reporting credit information. The notice language proposed by section 1785.26 is:

> "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted a credit reporting agency if you fail to fulfill the terms of your credit obligation."

67. Defendant failed to provide the notice required under Cal. Civ. Code § 1785.26 above.

68. The foregoing acts and omissions of Defendant constitute numerous and multiple

violations of the Rosenthal Act as to this Plaintiff, including but not limited to Cal. Civ.

Code § 1785.26, amongst others.

69. As a result of Defendant's violations of the Rosenthal Act, Plaintiff is entitled to his actual

damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or

willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

and costs for this action pursuant to Cal. Civ. Code § 1788.30(c), from Defendant.

## COUNT III.

## TELEPHONE CONSUMER PROTECTION ACT

### 47 U. S. C. § 227 *et seq.*

70. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as

though fully stated herein.

71. At all times relevant, Plaintiff is, and at all times mentioned herein was, a "person" as

defined by 47 U. S. C. § 153 (10).

72. Defendant is, and at all times mentioned herein was, a corporation and "person," as defined

by 47 U. S. C. § 153 (10).

73. Plaintiff is informed and believes, and thereon alleges, that on December 30, 2008

and at other time(s) that will be discovered during discovery, all prior to the date

this Complaint was filed, Defendant caused calls to be placed on Plaintiff's cellular

telephone via an "automatic telephone dialing system," as defined by 47 U. S. C. §

227 (a)(1).

74. Plaintiff is informed and believes, and thereon alleges, that the telephone number called

was assigned to a cellular telephone service for which Plaintiff incurs a charge for

incoming calls pursuant to 47 U. S. C. § 227 (b)(1).

75. Plaintiff is informed and believes, and thereon alleges, that these telephone calls

constituted calls that were not for emergency purpose as defined by 47 U. S. C. §227

(b)(1)(A)(i).

76. Plaintiff is informed and believes, and thereon alleges, that Plaintiff did not provide express

consent to receive calls on his cell phone, pursuant to 47 U. S. C. § 227 (b)(1)(A).

77. Defendant unfairly, unlawfully, intentionally, deceptively and fraudulently violated 47 U.

S. C. § 227 *et seq*.

78. As a result of Defendant's negligent violations of 47 U. S. C. § 227 *et seq*., Plaintiff is

entitled to an award of $500.00 in statutory damages, for each and every violation,

pursuant to 47 U. S. C. § 227(b)(3)(B), from Defendant.

79. Alternatively, Defendant caused the unlawful phone calls to be placed willfully and/or

knowingly, entitling Plaintiff to a maximum of treble damages from Defendant under the

TCPA, 47 U. S. C. § 227(b)(3)(C).

80. Plaintiff is also entitled to and seeks injunctive relief prohibiting such future conduct.

81. Plaintiff has suffered damages as a result of these violations of the TCPA.

### PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff respectfully prays that judgment be entered against each and

every Defendant by this Court for the following:

a) Enter injunctive and corresponding declaratory relief establishing the foregoing conduct of

Defendants to be unlawful, enjoining Defendants from continuing to engage in such

conduct, and granting such additional equitable relief as may be appropriate;

b) Award Plaintiff actual damages;

c) Award Plaintiff punitive damages;

d) Award Plaintiff state and federal statutory damages;

e)  Award Plaintiff compensatory damages for anxiety, severe emotional distress, frustration,

   upset, humiliation, sleeplessness amongst others in an amount to be determined at trial;

f)  Award Plaintiff costs of this *litigation;* and

g)  Grant such other and further relief as this Honorable Court deems just and proper.

Respectfully Submitted,

Dated: September 12, 2009

By: s/Samuel N.Edeh.
Samuel N. Edeh
Plaintiff, Pro Se
3123 15th Ave. NW #C
Rochester, MN 55901-1427
(507) 282-3577 phone
(208) 975-8084 facsimile