# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SAMUEL N. EDEH,<br><br>　　　　Plaintiff, *Pro Se,*<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>　　　　Defendant. | Civil File No. 09-CV-1706 (PJS/FLN) |

## AFFIDAVIT OF SAMUEL N. EDEH

I, Samuel N. Edeh, *pro se* plaintiff in the above-styled cause offer this Affidavit in support of Plaintiff's Motion for Partial Summary Judgment as to Liability against defendant and to authenticate the attached exhibits:

1. I am an individual consumer.

2. An agent of Midland Credit Management, Inc. ("Midland") contacted me on my cellular telephone on December 30, 2008 within one year of filling this case and attempted to collect a debt from me.

3. I incurred the debt for personal, family, or household purposes.

4. When Midland's agent contacted me on my cellular phone on December 30, 2008, he informed me that he was calling on behalf of HSBC and that he was attempting to collect on a certain debt. I don't remember everything that was said and the exact statements made but before the call ended I did ask him to send me something in the mail so I can determine the validity of the alleged debt.

5. I followed this oral disputation with formal disputations through a fax and a certified mail dated December 30, 2008 and March 5, 2009, respectively.

6. The telephone call from Midland came through my cell phone at 8:31 a.m. Central Standard Time on December 30, 2008. It was the first communication I received from Midland regarding the debt. I was at work when I took that call. When I returned home from work at around 5:30 PM on that day, I obtained a copy of my Trans Union credit report and noticed that Midland obtained a copy of my credit history in December 2008. Combining this new information from reviewing my credit report and the earlier collection call, I was convinced that Midland was indeed pursing collection on the alleged debt.

7. Soon after reviewing my credit report, I faxed to Midland the first validation request noted in ¶5 above. The fax was sent on or around Tue, Dec. 30, 2008 at 6:33:54 PM.

8. The telephone usage minutes I incurred for the collection call made from Midland were counted toward the minutes permitted under my cell phone plan.

9. I incurred usage charges under my cell phone plan.

10. I never informed Midland or HSBC/Orchard Bank that it could contact me on my cell phone by means of prerecorded messages and/or autodialed calls.

11. I certify that all Exhibits attached to Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment as to Liability are true copy of the original, except that appropriate redactions have been made to protect personal information and that exhibits may contain exhibit/page numbering for easy identification.

12. Exhibit A is a true and correct reproduction of specified Plaintiff's Requests for Admission and Defendant's Responses to them. The original document is available and will be produced upon the Court's request.

13. Exhibit B is a true and correct copy of the letter I faxed to Midland on December 30, 2008 in which I requested validation of debt.

14. Exhibit C-1 is a true and correct copy of email confirmations from j2 Global Communications, Inc., a.k.a. eFax.com, the provider of my fax service, indicating that I sent the dispute/cease and desist letter mentioned in ¶5 n. 7 above to Midland's California office fax number (1-858-309-6977) and to Midland's toll-free fax number (1-800-306-4443).

15. Exhibit C-2 is a true and correct copy of the follow-up dispute letter that I sent to Midland via U.S. Postal Services Priority Mail® service as well as a true and correct copy of "Track & Confirm" notification indicating that Midland received the letter at 8:45 a.m. on March 09, 2009 in San Diego, CA.

16. Exhibit C-3 is a true and correct copy of a formal complaint dated April 13, 2009 which I sent to the Better Business Bureau regarding the debt as well as true and correct copy of the mailing label utilized in sending a copy of the complaint to Midland's California office.

17. Exhibit D is a true and correct copy of pages from Midland's production notes.

18. Exhibit E is a true and correct copy of pages from Midland's Supplemental Answer to Plaintiff's Interrogatory No. 6

19. Exhibit F is a true and correct copy of pages from Midland's production notes indicating the debt was first reported to the credit reporting agencies on or around February 15, 2009.

20. Exhibit G is a true and correct copy of an alert from my credit report monitoring service supporting the view from ¶19 above that the debt was first reported to the credit reporting agencies on or around February 15, 2009.

21. Exhibit H is a true and correct copy of the referenced FDCPA Staff Opinion Letter which can be readily found at http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm

22. Exhibit I is a true and correct copy of a page from Midland's production notes which lists the site as SAN DIEGO.

23. Exhibit J is a true and correct copy of pages from documents produced to me by HSBC, the original creditor of the debt.

24. Exhibit K is a true and correct copy of pages from documents produced to me by Sprint, the provider of my wireless phone service.

25. Exhibit L is a true and correct copy of pages from the cell phone bill covering the period during which Midland contacted me on my cell phone.

Signed under the pains and penalties of perjury this 4th day of January, 2010

/s/Samuel N. Edeh
_____
SAMUEL N. EDEH, Pro Se