**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Samuel N. Edeh, | Civil File No. 09-CV-1706 (PJS/FLN) |
| Plaintiff *pro se*, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Midland Credit Management, Inc., | |
| Defendant. | |

# INTRODUCTION

Plaintiff *pro se* seeks tens of thousands of dollars in alleged emotional distress damages and other claimed damages following a single telephone call from Midland Credit Management, Inc. ("MCM") and the credit reporting of a debt Plaintiff admits he owes. The underlying debt is a credit card account which Plaintiff failed to pay and which MCM later purchased. Until recently, Plaintiff claimed he did not owe the subject debt, going so far as to assert "true identity theft." Plaintiff claimed he did not associate the credit card account (an Orchard Bank Mastercard) with its issuer (HSBC) even though (1) the mailing address for payments on the account was "HSBC Card Services"(*see* Ex. A); (2) the credit card statement directed that checks should be made "payable to HSBC Card Services" (*Id.*); (3) the account number on correspondence from Plaintiff was the same as that for the credit card account; and (4) Plaintiff referred to the account as an HSBC/Orchard account in correspondence to MCM five months before suing MCM (*see* Ex. K). Plaintiff also admits that he failed to take the simple step of

performing an internet search to see if the credit card account he did recall was the same as the one issued by HSBC until more than seven months after the single contact from MCM and more than a month after he sued MCM. In any event, Plaintiff now admits he owes the subject debt.

Nevertheless, Plaintiff asserts violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Telephone Consumer Protection Act, the California Rosenthal Act (a law enacted to protect California consumers), and Minnesota's Collection Agencies Act. MCM now moves for summary judgment on the following basis:

1. Plaintiff cannot raise a genuine issue of material fact for trial on the FCRA claim and thus summary judgment is warranted on that claim;

2. Plaintiff admits he has no evidence of a willful violation of the TCPA and thus his damages under the TCPA, if any, are limited to $500.00 and in light of the Rule 68 Offer of Judgment, this claim is moot;

3. The Rosenthal Act does not apply here because Plaintiff is not a California resident and, in any event, none of the challenged conduct occurred in California;

4. Even if there was a violation of the Minnesota Collection Agencies Act, there is no private cause of action nor provision for damages under the Act;

5. If Plaintiff is capable of proving a violation (or violations) of the FDCPA at trial, his statutory damages, if any, are limited to a maximum of $1,000.00 and in light of the Rule 68 Offer of Judgment, this claim is moot;

6. Plaintiff cannot establish a basis for punitive damages[1] and thus his claim for punitive damages must be dismissed; and

7. Based on the undisputed facts of this case, Plaintiff cannot, as a matter of law, raise a genuine issue of material fact for trial regarding the existence of

---

[1] Moreover, Plaintiff never moved to amend his complaint to allege punitive damages.

2

any emotional distress damages and thus his claim for emotional distress damages must be dismissed.

## UNDISPUTED FACTS

**A.    Plaintiff's Debt**

The debt at issue in this case is an Orchard Bank MasterCard issued by HSBC Card Services to Plaintiff Samuel N. Edeh.  *See* Exhibit A and Seconded Amended Complaint at ¶ 12.  Plaintiff now admits he failed to pay the debt and alleges that the account was charged off and sold to a collection agency in December of 2006.  Second Amended Complaint at ¶ 13.  Ultimately, MCM purchased the debt from Atlantic Credit and Finance in December of 2008.  *See* Answer to Interrogatory No. 9 (attached as Exhibit B).  Atlantic Credit and Finance provided to MCM, along with other information, a telephone contact number for Plaintiff.  *See* Response to Request for Admission No. 16 (attached as Exhibit B).  After eight months of claiming that he could not recognize the debt, did not owe the debt, that the debt was owed by someone else, and that he was a victim of true identity fraud, Plaintiff now admits he is the accountholder for the HSBC account and that he owes the debt.  *See* Production Notes attached as Exhibit C, Second Amended Complaint at ¶ 12, and Deposition of Plaintiff Samuel N. Edeh at pp. 11-13 (attached as Exhibit D).

**B.    Contact Between Plaintiff and MCM**

On December 26, 2008, MCM mailed initial correspondence regarding the debt from its mail house in Oaks, Pennsylvania, to Plaintiff at 6255 Delmar Boulevard, St. Louis, Missouri 63130.  *See* Defendant's Answer to Plaintiff's Second Set of

3

Interrogatories (attached as Exhibit E) and template of letter (attached as Exhibit F). Plaintiff admits that the Delmar Boulevard address was accurate at one time but that he had since moved. Edeh Dep. at p. 6. Despite moving, he did not provide a forwarding address to his creditors. *Id.* at p. 64.

On December 30, 2008, MCM contacted Plaintiff at the number provided by Atlantic Credit and Finance. *See* Defendant's Answer to Second Amended Complaint at ¶ 9; Response to Request for Admission No. 16 (Ex. B). Plaintiff asserts that the call from MCM was in violation of the TCPA because he did not consent to receiving calls from an automatic dialing system on his cellular telephone. *See* Second Amended Complaint at ¶ 18. Plaintiff admits he has no evidence that MCM was aware it was contacting Plaintiff on a cell phone. Edeh Dep. at pp. 22-23. During that single telephone conversation between MCM and Plaintiff, Plaintiff does not recall alerting MCM to the fact that it had contacted him on his cell phone. *Id.* at p. 22. Plaintiff does not allege any further telephone contact from MCM thereafter.

On December 31, 2008, Plaintiff sent MCM a fax indicating that MCM had the wrong person and requested that MCM send him documentation regarding the debt. *See* Exhibit C (Production Notes at entry 7-00).[2] MCM requested media supporting the debt thereafter. *Id.* at entry 10-001. Moreover, Plaintiff now admits that he was indeed the "right person."

---

[2] Entries on the Production Notes attached as Exhibit C are referred to by the numbers appearing under the column labeled "Seq #."

Despite this fact, Plaintiff began a campaign of avoiding the debt by sending repeated faxes and certified letters to MCM claiming that MCM had the wrong person. *See* Production Notes at entries 7-001; 23-001-008; 25-001-007; 27-001; 29-001. MCM reported the debt to the credit reporting agencies ("CRAs") in mid February of 2009, and thereafter Plaintiff began disputing the debt with the CRAs. *See* Second Amended Complaint at ¶ 32; Exhibit C.[3] The E-OSCAR request included the information provided by Plaintiff which was then compared by MCM with the information MCM has regarding the debt. *See* Supplemental Answer to Interrogatory No. 6 (attached as Exhibit G). The E-OSCAR disputes reflect that Plaintiff first claimed he simply did not owe the debt but escalated to the point where he complained of "true identity fraud." *See* Exhibit C at entries 14-000; 15-001; 16-001; 18-001; 20-001; 21-001; 22-001; 24-001; 27-001; 28-001; 29-001. In response to Plaintiff's claim of "true identity fraud," MCM chose to accept his claim and deleted the debt from the credit reporting agencies in May of 2009. *See* Second Amended Complaint at ¶ 45.

MCM made no further attempts to collect the debt after May 13, 2009. Nevertheless, given Plaintiff's written request for verification of the debt, on July 15, 2009, MCM did send Plaintiff a validation letter including a printout of the November 2, 2006 statement of the credit card issued to Plaintiff by HSBC Card Services. *See* Exhibits A and H.

---

[3] Plaintiff's disputes with the credit reporting agencies were transmitted to MCM via E-OSCAR, an automated system for requesting verification of a debt from the "furnisher" of the report.

Plaintiff claims lack of any knowledge that the account at issue was his until August of 2009, a month <u>after</u> suing MCM, when Plaintiff finally took it upon himself to search the internet for information regarding HSBC, the original creditor for the subject debt.  Edeh Dep. at p. 39. (Although he referred to the account as being from "HSBC/Orchard" in correspondence to MCM five months earlier in March of 2009. *See* Ex. K)  Plaintiff's simple search confirmed that the Orchard Bank MasterCard account he opened in Missouri was indeed issued by HSBC. *Id.*  The subject debt was his after all.

### C.     Plaintiff's Allegations Regarding Damages

Plaintiff claims he is entitled to statutory, punitive, and emotional distress damages based on two events: namely, the placement of a single telephone call on December 30, 2008, and the reporting by MCM of the debt Plaintiff now admits he owes from February 2009 to, at the latest, May, 2009 (three months).  He seeks the maximum statutory damages ($1,000) under the FDCPA, damages under the FCRA, treble damages for an alleged willful violation of the TCPA, damages under California law, and damages under a Minnesota statute that contains no provision for damages whatsoever.  He also seeks punitive and alleged emotional distress damages.

Based on past motions, this Court is well aware of the history of Plaintiff's emotional distress damages claim.  He initially asserted "severe" emotional distress, identifying two providers who allegedly witnessed his alleged symptoms.  However, when Plaintiff realized he would have to produce his medical records to support his claim, he instead chose to bring a motion to amend the Complaint to allege only "garden

...
...

variety emotional distress." During his deposition, Plaintiff provided the following sworn testimony with regard to his purported emotional distress.

- In early 2009, prior to suing MCM in July of 2009, Plaintiff sued three other debt collection agencies alleging claims under the FDCPA. Edeh Dep. at 44, 49-56. He owed those debts as well. *Id.* at p. 56. He is no longer required to pay at least two of those debts due to the settlement and resolution of the lawsuits. *Id.* at pp. 53-55.

- Also in 2009, prior to suing MCM, Plaintiff sued his landlord, alleging that the landlord failed to repair a plumbing problem in which Plaintiff's upstairs neighbor's toilet wastewater would flow into Plaintiff's sink and bathtub, thus causing him significant stress. Edeh Dep. at p. 56-59.

- When asked what the top stressors were in his life, Mr. Edeh first mentioned supporting a family in his home country and juggling work, school and other things he has to do, in life. Edeh Dep. at p. 47.

- Mr. Edeh acknowledges that out of the five lawsuits he filed in 2009, MCM is the only defendant that has not quickly settled his claim.

- Mr. Edeh has been contacted by yet another debt collector. *Id.* at 45.

- Mr. Edeh does not intend to call any witnesses to support his self-described emotional distress symptoms. *Id.* at p. 68.

Finally, one of Plaintiff's alleged "symptoms" of emotional distress is "loss of sleep." Second Amended Complaint at ¶ 64. Curiously, Plaintiff sought treatment for

sleeplessness in November of 2008, a month before any contact from MCM. *See* Exhibit I.[4] While we expect that Plaintiff will claim that the medical record documenting this fact is inadmissible in light of the withdrawal of his claim for severe emotional distress, Plaintiff cannot perjure himself in response to a question at trial as to whether he ever sought treatment for sleeplessness <u>before</u> being contacted by MCM.

## LEGAL ARGUMENT

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The adverse party "may not rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of LeSeuer,* 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has discharged this burden, the burden then shifts to the

---

[4] After filing and arguing a motion to amend the complaint, a motion for a protective order to prevent inquiry into his medical records and a motion to withdraw references to his medical records from the court record, Plaintiff nonetheless sent unsolicited excerpts from his medical records referenced herein to counsel for MCM. *See* Gustad Aff. at ¶ 10.

non-moving party to set forth specific facts showing a genuine triable issue. On a defendant's motion for summary judgment, the trial judge must decide whether there is evidence upon which a jury could properly find a verdict in favor of the plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

**B.     The FCRA Claim Fails as a Matter of Law.**

Plaintiff alleges that MCM violated the FCRA by failing to "reinvestigate reasonably to fulfill its duty under § 1681-2(b) of the Act." Second Amended Complaint at ¶ 95. To prevail on a claim under the FCRA, a consumer must establish actual negligence on the part of the furnisher in investigating the dispute. *See* 15 U.S.C. § 1681o. The FCRA does not specify the type of investigation required, but courts have held that a furnisher's investigation should be reasonable based on the information from the consumer to determine whether the disputed information could be verified. *Malm v. Household Bank (SB), N.A.*, No. 03-4340 ADM/AJB (D. Minn. July 7, 2004), *citing Johnson v. MBNA American Bank NA*, 357 F.3d 426, 431 (4th Cir. 2004).

In this case, MCM had in place a process to verify the information regarding Plaintiff's debt in response to the E-OSCAR disputes. *See* Exhibit G. The "disputes," which initially indicated that Plaintiff claimed the debt was "not his/hers," were disingenuous because, after all, the debt really was Plaintiff's. Plaintiff conceded this fact in his deposition and even testified that any MCM investigation would have found nothing other than even further evidence indicating that Plaintiff did indeed owe the debt. Edeh Dep. at p. 30-31. To be sure, MCM's system did confirm that the information it reported regarding the debt matched Plaintiff's personal information.

9

Further, the cryptic "not his/hers" terms fail to provide a basis for an argument that additional inquiry or investigation is necessary. *Malm*, 2004 WL 1559370 at *5 (holding that an investigation was reasonable given cursory notice ("not his/hers") concerning the plaintiff's dispute.) Notably, in *Malm*, the plaintiff actually did have a basis for a dispute which was that the underlying account was opened without her permission. Here, Plaintiff has no such legitimate basis to argue that further investigation was necessary, especially given his belated admission that he does owe the debt.

The FCRA also requires proof of actual damages. 15 U.S.C. § 1681o. The only damages that Plaintiff alleges as a result of the alleged violation of the FCRA are those for emotional distress. Those damages must be denied as set forth in section H below even if such "emotional distress" damages were recoverable under the FCRA. Thus, even if Plaintiff could prove negligence, his FCRA claim must be dismissed for lack of proof of recoverable/actual damages.

**C.     There is No Evidence of a Willful Violation of the TCPA.**

Under the TCPA, it can be unlawful for a person to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system to any telephone number assigned to a cellular telephone service under circumstances. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does provide for a private right of action to recover for the actual monetary loss for violation of the TCPA or $500 in damages for each violation, whichever is greater.

*Id.* at subsection (c)(5)(B). If a party willingly or knowingly violates the TCPA, a court may, <u>in its discretion</u>, award treble damages. *Id.*[5]

Here, there was one completed call to Plaintiff on his cell phone via auto-dialer. Further, while Plaintiff denies providing "prior express consent" to HSBC or other assignees to contact via his cell phone, he has not alleged that he did not provide his telephone number as the proper contact to the credit reporting agencies. If Plaintiff provided his cell phone as the proper contact number regarding the subject debt to the CRAs or others, he may be deemed to have consented to receiving calls on his cell phone regarding that debt. *See In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8773, 2008 WL 65485 (Jan. 2008).

Even if the call at issue is deemed a violation of the TCPA, there is no evidence that MCM knew it was contacting Plaintiff on his cell phone in willful violation of the statute. Plaintiff admitted in his deposition that he has no evidence that when MCM called him on December 30, 2008, (the call at issue) it was in any way aware that it was contacting Plaintiff on a cell phone. And Plaintiff did not tell MCM it had called him on his cell phone during this single call. Thus, at most, Plaintiff's TCPA damages, if any, are limited to a maximum of $500.

Further, MCM served Plaintiff with a Rule 68 Offer of Judgment on January 14, 2010 which specifically states that it is offered in satisfaction of his TCPA claim (and the FDCPA claim). As set forth more fully at page 14, when an Offer of Judgment moots a

---

[5] Plaintiff has also requested injunctive relief which, given that MCM contacted him only once, more than a year ago, is not warranted.

claim, and no other claims withstand summary judgment, the entire case is properly dismissed as there is nothing more for the court to decide.

**D.     The Rosenthal Act Does Not Apply.**

Plaintiff asserts he is entitled to bring a claim under the Rosenthal Act, a California state statute that regulates debt collection activity. MCM does not dispute that its headquarters are in California. However, the Rosenthal Act is wholly inapplicable here because it is undisputed that Plaintiff is not a resident of California. Moreover, none of the conduct that Plaintiff challenges occurred in California.

The court's decision in *Pollock v. Bay Area Credit Service, LLC*, 2009 WL 2475167 (S.D. Fla. 2009), is instructive on these points. In *Pollock*, the plaintiff consumer, a Florida resident, contended that the defendant violated the Rosenthal Act because the defendant's headquarters were located in California. The Federal District Court in Florida rejected the application of the Rosenthal Act to the Florida consumer after concluding, based on its review of the California Civil Code and commentary on the Rosenthal Act protection, that the Act was only meant to protect California consumers. The court further noted that the plaintiff had not pointed to, and the court had not located, any case standing for the proposition that the Rosenthal Act applies to an out-of-state plaintiff/debtor against a California-based debt collector, especially, where the challenged conduct occurred outside of California.

Here Plaintiff complains of a single phone call that originated from Phoenix, Arizona. He also complains of MCM's reporting of the debt after he disputed that he owed the debt. However, MCM's reporting to the CRAs originates from Phoenix as

well. *See* Ex. G. Plaintiff also complains that MCM "failed to re-investigate" the debt in response to his disputes to the CRAs. Just as with the other alleged conduct, MCM's investigations of E-OSCAR disputes are also performed in Phoenix. *Id.* While MCM did send Plaintiff a letter with attached media supporting the debt from its Consumer Relations department in California in July of 2009, it did so at Plaintiff's request. This letter in no way violates either the FDCPA, or the Rosenthal Act, even if the Rosenthal Act did apply.

Plaintiff can establish no basis for the application of the Rosenthal Act to his Minnesota lawsuit and thus that claim is properly dismissed on summary judgment.

**E.     The Minnesota Collection Agencies Act Claim Is Properly Dismissed.**

In his Second Amended Complaint, Plaintiff asserts a curious claim that MCM somehow violated Minn. Stat. § 332.37(21) which requires debt collectors to note their Minnesota licensure on their first communication with a Minnesota debtor. *See* Second Amended Complaint at ¶ 48-50, 80-83. At the outset, it is worth noting that Plaintiff claims he never even received MCM's initial communication, a letter dated December 26, 2008. *Id.* at ¶ 49. MCM sent the letter to Plaintiff's former address in Missouri. *See* Ex. E. While continuing to assert this claim, Plaintiff did concede in his deposition that under such circumstances, application of the requirements of a Minnesota statute would not be reasonable. *See* Edeh Dep. at p. 64.

Plaintiff also mistakenly suggests that if he establishes an FDCPA claim, he is entitled to additional damages under Minn. Stat. § 332.37. However, Minn. Stat. § 332.37 is part of a regulatory statute governing debt collectors; it does <u>not</u> provide for a

private cause of action on its face. *See Bryant v. Bonded Account Service*, 208 F.R.D. 251, 257 (D. Minn. 2000) and Minn. Stat. § 332 *et seq.* Nor does it provide a plaintiff any damages for a violation of it. *Id.* Because it provides no additional means of relief to Plaintiff, this claim is properly dismissed.

**F.   Statutory Damages Under the FDCPA are Limited to a Maximum of $1000.00.**

The maximum statutory recovery for a proven violation of the FDCPA is $1,000.00 as a matter of law. 15 U.S.C. § 1692k. As set forth in section H below, Plaintiff cannot establish emotional distress damages as a result of the purported FDCPA violation. Thus the maximum damages available under the FDCPA are limited to $1,000.00, even assuming Plaintiff can prove such a claim.

Also, a valid offer of judgment that would satisfy a plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction. *Jones v. CDE Group, Inc.*, 215 F.R.D. 558, 562 (D. Minn. 2003); *see also Rand v. Monsanto Company*, 926 F.2d 596, 598 (7th Cir. 1991); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986); *Abrams v. Interco, Inc.*, 719 F.2d 23, 32-34 (2nd Cir. 1983); *see also discussion* in *Malm*, 2004 WL 1559370 at *3, cited above.

Here, MCM offered the maximum statutory damages available under both the FDCPA and TCPA when it served Plaintiff with an Offer of Judgment in the amount of $2501.00 plus reasonable costs on January 14, 2010. *See* Ex. J. If the Court grants summary judgment in favor of MCM on the remainder of Plaintiff's claims, there is no

further controversy between the parties, leaving nothing for this Court to resolve. Thus summary judgment on all claims would be warranted.

**G.    There Is No Basis for an Award of Punitive Damages**

Plaintiff includes in his prayer for relief a claim for punitive damages based on the assertion that MCM's actions in calling him once on his cell phone via auto-dialer and continuing to report for three months a just and owing debt amounts to a "willful disregard" for Plaintiff's rights. There is simply no basis for an award of punitive damages based on the undisputed facts of this case.

First, punitive damages are simply not available under the FDCPA. *See* 15 U.S.C. § 1692k (enumerating damages allowed by FDCPA) and *Gervais v. O'Connell, Harris and Associates, Inc.*, 297 F.Supp.2d 435, 440 (D. Conn. 2003) (recognizing that the FDCPA does not authorize punitive damages). Next, as set forth above, Plaintiff cannot establish negligence on the part of MCM with regard to Plaintiff's claim under the FCRA. Plaintiff also admits he has no evidence of a willful violation of the TCPA which, in any event, lacks any provision for punitive damages for a violation other than treble damages. Likewise, as set forth above, the Rosenthal Act does not apply in any way to Plaintiff's claims and the Minnesota Collection Agencies Act provides no remedy or damages of any kind -- statutory, actual, or punitive. There is simply no factual or legal basis for such an award.

In any event, Plaintiff has failed to properly assert any such punitive damages. He has wholly failed to obtain leave of court based upon a *prima facie* showing of entitlement prior to asserting such a claim. *Ulrich v. City of Crosby*, 848 F.Supp. 861,

866 (Minn. 1994). In order to establish a claim for punitive damages, a party must show, by clear and convincing evidence that the defendant acted with a deliberate disregard for the rights or safety of others. *Hern v. Bankers Life Casualty Co.*, 133 F.Supp.2d 1130, 1135 (D.Minn. 2001) and Minn. Stat. § 549.20, subd. 1(a). There is absolutely no evidence that MCM acted with deliberate disregard for the rights of Plaintiff such that any claim for punitive damages should be denied.

**H.    Plaintiff Cannot Establish Emotional Distress Damages as a Matter of Law.**

Plaintiff also attempts to pursue an "emotional distress" damages claim. While emotional distress damages may be available under some circumstances, federal courts have expressed understandable concern that emotional distress damages are "easy to manufacture," "fraught with vagueness and speculation," and "susceptible to fictitious and trivial claims." *Zean v. Unifund CCR Partners*, Civil No. 08-1091 (DWF/AJB) (D. Minn. 2009), 2009 WL 2461723 at *2, quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004), *Sloane v. Equifax Info. Services LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (additional citations omitted).

Two recent decisions of this Court are instructive in evaluating Plaintiff's purported emotional distress claim here. In *McKinley v. CSC Credit Services, Inc.*, Civil No. 05-2340 ADM/JJG (D. Minn. 2007), 2007 WL 1412555, the court granted summary judgment in favor of the defendant collection agency finding that the plaintiff could not, as a matter of law, maintain a claim for emotional distress damages. The plaintiff was a mortgage officer who claimed that due to inaccurate reporting of a credit card debt, he received a higher interest rate on a subsequent mortgage loan. He claimed he suffered

16

emotional distress which manifested itself in the form of insomnia, distraction, anger, a short temper, feelings of low self-worth, disappointment, and disillusionment. *Id.* at *5. The plaintiff submitted four affidavits -- from his girlfriend, a brother, a friend of 35 years, and a former co-worker – all of whom purported to testify as to the plaintiff's emotional distress.

The district court in *McKinley* held that the Plaintiff's evidence as such was insufficient <u>as a matter of law</u> to establish the type of emotional distress that warrants an award of actual damages. *Id.* In reaching its decision the McKinley court looked to the decision of the Eighth Circuit in *Forshee v. Waterloo Industries, Inc.*, 178 F.3d 527, 531 (8th Cir. 1999). In *Forshee*, the court applied the "genuine injury test" and noted that while a compensatory damage award may be based solely on a plaintiff's own testimony, evidence where the plaintiff suffered no physical injury, was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress was not sufficient to survive summary judgment.

Similarly, in *Zean*, the plaintiff's dispute with the defendant collection agency arose out of the alleged inaccurate reporting of a debt owed on the basis of a U.S. Bank credit card. *Id.* at *1. The plaintiff claimed he suffered emotional distress in the form of lack of concentration, frustration, sleeplessness, affect on his family, and not being able to do things he regularly did. *Id.* at *3. The District Court of Minnesota granted summary judgment in favor of the defendant collection agency concluding that the plaintiff had not put forth sufficient evidence to allow recovery of emotional distress damages under any standard. *Id.*

In evaluating plaintiff's emotional distress claim, the *Zean* court compared the plaintiff's alleged emotional harm with the level of distress suffered by plaintiffs in cases where such damages were properly awarded. *Id.* at *4 citing *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (holding plaintiff met the burden of showing emotional distress damages where the defendant made multiple requests for credit reports, threatened the plaintiff with loss of his profession and alleged that the plaintiff and his wife had been involved in child molestation matters that would have a devastating effect upon their lives, even if false); *Bach v. First Union National Bank*, 149 Fed. App. 354, 361 (6th Cir. 2005) (awarding emotional distress damages where plaintiff was an actual victim of identity theft and suffered an adverse credit determination while attempting to purchase a home); and *Sloane*, 510 F.3d at 501 (awarding emotional distress damages to another identity theft victim based on evidence of deterioration of her marriage and severe sleeplessness resulting in the plaintiff nodding off while driving). The court in *Zean* further noted that plaintiff failed to provide sufficient evidence of causation between the specific acts of the collection agency and the emotional distress noting that the plaintiff did not distinguish between the actions of the credit card company and the collector. *Zean* at *6.

Here, Plaintiff identifies essentially two acts by MCM: (1) making a single call to his cell phone and (2) reporting a debt he owed on his credit report for three months. Plaintiff's alleged emotional distress, like that of the plaintiffs in *Zean* and *McKinley*, allegedly results in claimed "frustration, humiliation, and sleep loss." Second Amended Complaint at ¶ 64. Just like the plaintiff in *Zean*, Plaintiff has no evidence of the alleged

distress other than his own word. Plaintiff here even lacks the affidavit testimony that was deemed insufficient as a matter of law to support the emotional distress claim in *McKinley*. Under *Zean, McKinley*, and *Forshee*, Plaintiff here has not demonstrated the *bona fide* emotional distress that merits an award of actual damages.

Additionally, all evidence of causation regarding emotional distress concerns factors other than MCM's conduct as the source of any emotional distress that Plaintiff claims. Plaintiff identified numerous stressors in his life including a landlord dispute, three other lawsuits against collection agencies for debts he also admitted he owed but did not pay, supporting a family abroad, and balancing work and life. To the extent Plaintiff claims that his alleged emotional distress resulted in sleeplessness, it is undisputed that he was already seeking treatment for that issue prior to any contact from MCM. *See* Ex. I. Most importantly, and unlike the plaintiffs in *Zean, McKinley, Bakker, Bach and Sloane*, Plaintiff here does not even dispute that he alone owes the subject debt and the fact that the subject debt remains unpaid. He admits these facts concern him and thus these factors too must be considered an additional source of stress.

There is simply no adequate evidentiary basis to support a legitimate claim for emotional distress caused by MCM as a result of a single phone call and the reporting of a just and owing debt for a few months. Summary judgment in favor of MCM on Plaintiff's claim for emotional distress damages is therefore warranted.

**CONCLUSION**

For the reasons set forth above, the Court should grant summary judgment in favor of MCM and Plaintiff's claims against MCM should be dismissed on the merits and with prejudice.

**BASSFORD REMELE**
*A Professional Association*

Dated: January 15, 2010          By s Susan E. Gustad
                                    Michael A. Klutho (License #186302)
                                    Susan E. Gustad (License #0268008)
                                 Attorneys for Defendant
                                 33 South Sixth Street, Suite 3800
                                 Minneapolis, Minnesota  55402-3707
                                 Telephone:   (612) 333-3000
                                 Facsimile:   (612) 333-8829
                                 mklutho@bassford.com; sgustad@bassford.com

881115