UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Samuel N. Edeh,                                               Civil No. 09-1706 (PJS/FLN)

                    Plaintiff,
   v.                                                       **REPORT AND**
                                                   **RECOMMENDATION**
Midland Credit Management, Inc.,

                      Defendant.

_____

Samuel N. Edeh, *Pro Se* Plaintiff.
Susan E. Gustad for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 26, 2010 on Plaintiff's Motion for Partial Summary Judgment as to Liability [#41] and Defendant's Motion for Summary Judgment [#43]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that both parties' motions for summary judgment be **GRANTED, in part, and DENIED, in part**.

### I.  BACKGROUND

Samuel N. Edeh ("Plaintiff") seeks actual, punitive, statutory, and emotional distress damages (*see* Doc. No. 36, Second Am. Compl. at 14) based on two events: namely, the placement of a call to Plaintiff's cellular phone on December 30, 2008 and the credit reporting by Midland Credit Management, Inc. ("MCM" or "Defendant") from on or about February 13, 2009 to on or about May 13, 2009 (Doc. No. 36, Second Am. Compl. ¶¶ 30, 45) of a debt

1

Plaintiff now admits he owes (Doc. No. 46, Aff. of Susan E. Gustad, Jan. 15, 2010, Ex. D at 15-16). MCM does not dispute that it placed the telephone call or reported the debt at issue.

In his Second Amended Complaint, Plaintiff asserts violations of the following statutes: Count I: Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Count II: Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code §§1785.26-1788.30; Count III: Minnesota's Collection Agencies Act, Minn. Stat. § 332.31-332.45; Count IV: Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; and Count V: Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Doc. No. 36, Second Am. Compl.)

The parties have brought cross-motions for summary judgment. Defendant's motion seeks dismissal of all claims against it (Doc. No. 43), while Plaintiff's motion seeks summary judgment "as to liability only" on Counts 1 through IV of his Second Amended Complaint (Doc. No. 41).

## II. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III. DISCUSSION

**A. Plaintiff is entitled to summary judgment with respect to liability on the FDCPA and TCPA claims.**

Because there is no dispute as to whether MCM placed the telephone call to Plaintiff's cellular telephone and continued to attempt to collect the debt after Plaintiff disputed the debt,

3

Plaintiff is entitled to summary judgment as to liability on the FDCPA and TCPA claims.

   1. **Defendant violated the FDCPA.**

      a. **MCM complied with the notice requirement of 15 U.S.C. § 1692g(a).**

The FDCPA provides, in part:

> **(a) Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed;
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Here, it appears that Defendant did not receive a written statement from MCM within 5 days of the December 30, 2008 phone call. (*See generally* Doc. No. 41-3, Aff. of Samuel N. Edeh, Jan. 4, 2010.) Still, on December 26, 2008, MCM mailed, from its mail house in Oaks, Pennsylvania, an initial letter to Plaintiff at his previous address in St. Louis, Missouri. (Doc. No. 46, Ex. E.) The form letter contained the information regarding the debt required by the statute. (Doc. No. 46, Ex. F.) Plaintiff offers no evidence to rebut the fact that the December 26,

2008 letter was sent or that it contained the required statutory notices. Rather, he asserts that he never received it.

"The FDCPA only requires the debt collector to send the notice, not to establish actual receipt." *See Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458 at *12 (N.D. Ill. Feb. 18, 2009) ("Had Congress wanted to impose such an obligation, it could have required debt collectors to send the validation notice by certified or registered mail, or via personal service, but it chose not to do so."), citing *Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1201-02 (9th Cir. 1999) (determining that a debt collector must prove only that the notice was sent, not that it was actually received by the consumer); *see also Sower v. Van Ru Financial Services, Inc.*, 1995 WL 870853 at *3 (D. Minn. June 28, 1995) ("Defendants have satisfied their initial burden of establishing that a letter containing a FDCPA validation notice was sent" to Plaintiff, and Plaintiff's "burden is to effectively oppose Defendants' statements that it *was* sent.").

Therefore, this Court finds that MCM complied with the notice requirement of the FDCPA by mailing its initial correspondence to Plaintiff's address of record in St. Louis on December 26, 2008.

      **b.**    **Still, MCM violated 15 U.S.C. § 1692g(b) by continuing to report a disputed debt.**

The FDCPA further provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy

5

> of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

Here, Plaintiff sent two dispute letters to MCM contesting the debt at issue—one on December 30, 2008 and one on March 5, 2009. (Doc. No. 41, Exs. B and C-2.) The December 30, 2008 letter stated: "I dispute that I owe MCM any money" and asked: "What is the debt you say I owe for?" (Doc. No. 41, Ex. B.) It further requested that MCM "cease and desist all collection activity against me pending successful verification of this debt." (Doc. No. 41, Ex. B.) Plaintiff sent the December 30, 2008 letter to MCM by fax on the same date (Doc. No. 41, Ex. C-1.) The March 5, 2009 letter stated "a formal request to [MCM] to conduct an investigation of this account." (Doc. No. 41, Ex. C-2.)

Plaintiff's December 30, 2008 dispute letter complied with the 30-day requirement of the FDCPA. *See* 15 U.S.C. § 1692g(b). In fact, the letter was faxed the same day Plaintiff received the call from MCM on his cellular phone. (Doc. No. 41-3 ¶¶ 5 and 7.) Despite receiving Plaintiff's initial dispute facsimile (Doc. No. 41, Ex. D at 4), MCM apparently did not provide verification of the debt to Plaintiff until July 15, 2009. (Doc. No. 46 ¶ 9, Exs. A and H; Doc. No. 53, Aff. of Samuel N. Edeh, Jan. 29, 2010, Ex. O). Instead, for a number of months, MCM continued to report the debt to credit reporting agencies. (Doc. No. 53, Exs. A and B.)

Pursuant to the FDCPA, MCM was required to "cease collection of the debt" when it received Plaintiff's notice of dispute until it verified the debt and sent a copy of the "verification or judgment, or name and address of the original creditor" to Plaintiff. *See* 15 U.S.C. § 1692g(b).

6

Courts have held that the reporting of a debt to a consumer reporting agency, after validation has been requested but not provided, should be considered continued collection activity under the statute.[1] *See Quale v. Unifund CCR Partners*, 2010 WL 338044 at *4-5 (S.D. Ala. Jan. 27, 2010) (finding that "Plaintiff's allegations that Defendant, after receiving Plaintiff's request for verification, failed to verify the debt and, instead, reported it to Experian and Innovis without notifying the agencies that the debt was disputed, are sufficient, at this stage of the proceedings, to state a claim under § 1692(b) of the FDCPA"), citing *Purnell v. Arrow Financial Services*, 303 Fed. Appx. 297 (6th Cir. 2008) (assuming, without deciding that the debt collector's reporting of a debt to a credit reporting agency after receiving, but not responding to, a request for verification constituted "collection activity"); (Doc. No. 41, Ex. H, Letter from John F. LeFevre, Federal Trade Commission, Dec. 23, 1997 ("[W]e believe that reporting a charged-off debt to a consumer reporting agency . . . constitutes 'collection activity . . . .'")

Here, MCM reported Plaintiff's debt to consumer reporting agencies in February of 2009, without first responding to Plaintiff's validation request. It did not provide Plaintiff with a copy of its debt verification until at least July 15, 2009. (Doc. No. 46 ¶ 9, Exs. A and H.) For purposes of an FDCPA violation, it is of no consequence that the underlying debt ultimately proves to be valid. *See Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.")

Because the continued reporting of a debt constitutes a prohibited collection activity, the

---

[1] The Court notes that this appears to be a matter of first impression within the Eighth Circuit.

Court concludes that MCM violated 15 U.S.C. § 1692g(b). Thus, summary judgment should be granted to Plaintiff with respect to liability on the FDCPA claim and Defendant held strictly liable for its violation. *See Picht v. John R. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir. 2001).

> 2. **Defendant violated the TCPA.**

The TCPA provides, in part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

It is uncontested that, on December 30, 2008, Defendant placed a call to Plaintiff's cellular telephone (Doc. No. 41-3 ¶¶ 2, 4, 6) using an "automatic telephone dialing system." (Doc. No. 41, Ex. A at 2); *see* 47 U.S.C. § 227(b)(1)(A)(iii). The call was not for emergency purposes (Doc. No. 41, Ex. A at 2) and was placed without Plaintiff's "prior express consent" (Doc. No. 41-3 ¶ 10). Genuine issues of material fact exist, however, as to whether Defendant "willfully or knowingly"[2] violated the TCPA. *See* 47 U.S.C. § 227(b)(3).

> 3. **The Rule 68 offer of judgment does not moot the FDCPA and TCPA claims.**

Defendant relies on *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 562 (D. Minn. 2003), for the assertion that its previous Rule 68 offer moots the FDCPA claim. The instant case is

---

[2] Discovery appears to be ongoing in this regard. (*See e.g.* Doc. No. 68.)

distinguishable from *Jones* in that Plaintiff seeks not only statutory damages of up to $1000 but also actual damages and "general emotional damages." (Doc. No. 36, Second Am. Compl. at 14.)

> A debt collector who fails to comply with any provision of the FDCPA is liable:
>
> . . . in an amount equal to the sum of—
>
> **(1)** any actual damage sustained by such person as a result of such failure;
> **(2)**
> **(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
> **(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
> **(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a).

Here, Plaintiff may be entitled to recover the "actual damage sustained" *as well as* an additional $1000, and he may ultimately recover "the costs of the action."

> The TCPA also provides for a private right of action and recovery of damages, stating:
>
> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

Here, Plaintiff may be entitled to recover his "actual monetary loss" if it amounts to more than $500, or he may ultimately recover "an amount equal to . . . 3 times" his monetary loss, if he can prove a willful and knowing violation of the TCPA and such damages amount to more than $1500 when trebled. Because genuine issues of material fact exist regarding the amount of actual damages sustained by Plaintiff in this case for purposes of both the FDCPA and TCPA claims, summary judgment as to damages is not proper at this juncture.

In sum, summary judgment for Plaintiff is appropriate as to liability only with respect to the FDCPA and TCPA claims. Factual issues regarding any potential willful or knowing violation of the TCPA as well as the amount of damages for violations of the TCPA and FDCPA, including potential emotional distress damages and medical costs, remain.

**B. Plaintiff has failed to demonstrate that the Minnesota Collection Agencies Act provides for a private cause of action.**

Plaintiff contends that MCM violated Minn. Stat. § 332.37, but concedes that he has no support for his proposition that there exists a private cause of action under the statute. *See Morris v. American Fam. Mut. Ins.*, 386 N.W.2d 233 (Minn. 1986); Minn. Stat. § 332 *et seq.* Further, there is no provision for damages under the Act. *See* Minn. Stat. § 332 *et seq.* Because this Court has seen no evidence that the Minnesota legislature intended for a private cause of action to exist under Minn. Stat. § 332.37, Plaintiff's Minnesota Collection Agencies Act claim should be

dismissed.

**C. Plaintiff has failed to assert a valid claim under California's Rosenthal Act.**

Plaintiff also moves for summary judgment on his Rosenthal Act claim, arguing that a violation of the FDCPA constitutes a *per se* violation of the California statute. Although MCM's headquarters are located in California, Plaintiff resides in Minnesota, and the December 30, 2008 call to his cell phone at issue originated in Phoenix, Arizona.[3] Additionally, reports to consumer reporting agencies originate from MCM's Phoenix, Arizona location. (Doc. No. 46, Ex. G.) It thus appears to the Court that none of the challenged conduct occurred within California.

Given that the Rosenthal Act "is aimed at preventing abusive collection practices, the Court finds that the Act is meant to protect California consumers and not necessarily to prohibit violations by collection agencies with their headquarters located in the state but carrying out actions elsewhere." *Pollock v. Bay Area Credit Service, LLC*, 2009 WL 2475167 at *12 (S.D. Fla. Aug. 13, 2009). As in *Pollock*, Plaintiff has not identified any case "standing for the proposition that the Rosenthal Act may apply to an out-of-state plaintiff/debtor against a California-based debt collector that pursued claims from locations outside of California." *Id.* The Court, therefore, declines to extend the protections of California law to a Minnesota resident in a case in which the challenged conduct originated in Phoenix, Arizona. Plaintiff's claim under the Rosenthal Act should thus be dismissed.

**D. Genuine issues of material fact exist regarding the FCRA claim.**

---

[3] The fact that the telephone call originated from Phoenix, Arizona appears to be undisputed. The Court notes, however, that although MCM asserts this fact in its memorandum in support of its motion for summary judgment, MCM has failed to cite to factual support for this assertion, by affidavit or otherwise, in the record. (Doc. No. 45 at 12.)

11

15 U.S.C. § 1681s-2(b) "describes the duties of any entity which provides information to a Credit Reporting Agency when such entity is notified of a dispute regarding the completeness or accuracy of the furnished information." *Schaffhausen v. Bank of America, N.A.* 393 F.Supp.2d 853, 858 (D. Minn. 2005) (quotation omitted). To overcome MCM's motion for summary judgment, Plaintiff must present evidence that MCM "failed to comply with the provisions of § 1681s-2 and must present evidence of harm and causation, or willfulness entitling him to statutory or punitive damages." *Id.* (quotation omitted).

To prevail on a claim under the FCRA, a consumer must establish, at a minimum, negligence on the part of the debt furnisher in investigating the dispute. *See* 15 U.S.C. § 1681o. The FCRA does not specify the type of investigation required, but courts have held that once a furnisher receives a notice of dispute, it is required to "conduct a reasonable investigation of its records to determine whether the disputed information can be verified." *Schaffhausen*, 393 F.Supp.2d at 858 ("[S]uch an investigation requires some degree of careful inquiry by creditors"); *see Malm v. Household Bank (SB), N.A.*, 2004 WL 1559370 at *4 (D. Minn. July 7, 2004), citing *Johnson v. MBNA American Bank NA*, 357 F.3d 426, 431 (4th Cir. 2004). "In the majority of cases, reasonableness is a question for the jury." *Graham v. CSC Credit Services, Inc.*, 306 F.Supp.2d 873, 878 (D. Minn. 2004) (determining reasonable procedures should "assure maximum possible accuracy"), citing *Cousin v. Trans Union Corp.,* 246 F.3d 359, 368 (5th Cir. 2001).

MCM asserts that it satisfied the reasonableness standard when it relied on the information furnished to it by the seller of the debt and had no reason to doubt the accuracy of

that information. *See Graham*, 306 F.Supp.2d at 878. Here, while MCM may have been entitled to rely on the information it had in its possession before it received the dispute letter from Plaintiff, MCM "did have reason to doubt the information" after it received Plaintiff's December 30, 2008 dispute letter. *See id.* (evaluating procedures a consumer reporting agency must follow under § 1681e(b)).

Additionally, genuine issues of material fact exist as to whether MCM's investigation of Plaintiff's debt was reasonable. *See Johnson*, 357 F.3d at 431 ("We therefore hold that § 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified."); *see also Graham*, 306 F.Supp.2d at 878 ("Additionally, Graham raises an issue of material fact when he argues that CSC's procedures were unreasonable even before it received notice of Graham's dispute, because CSC failed to keep track of the source of the addresses that it reported on Graham's report.")

The determination of the reasonableness of a defendant's procedures "is treated as a factual question even when the underlying facts are undisputed" and "therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question." *Graham*, 306 F.Supp.2d at 878, quoting *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001). The reasonableness of MCM's procedures for tracking the sources of the information that it receives is not "beyond question." *See Graham*, 306 F.Supp.2d at 878. Thus, the Court concludes that a question of material fact remains regarding whether MCM violated the FCRA.

Despite the fact that Plaintiff admits incurring the debt, the reasonableness of the investigation under the FCRA remains a question of fact for the jury to decide. Therefore, MCM is not entitled to summary judgment on this claim.

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment as to Liability [#41] be **GRANTED, in part, and DENIED, in part,** as follows:

1. With respect to Count I, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the motion should be **GRANTED**.

2. With respect to Count II, alleging violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1785.26-1788.30, the motion should be **DENIED**.

3. With respect to Count III, alleging violations of the Minnesota Collection Agencies Act, Minn. Stat. §§ 332.31-332.45, the motion should be **DENIED**.

4. With respect to Count IV, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, the motion should be **GRANTED**.

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#43] be **GRANTED, in part, and DENIED, in part,** as follows:

1. With respect to Count I, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the motion should be **DENIED**.

2. With respect to Count II, alleging violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1785.26-1788.30, the motion should be **GRANTED**, and Count II of the Second Amended Complaint should be **DISMISSED with prejudice**.

3. With respect to Count III, alleging violations of the Minnesota Collection Agencies Act, Minn. Stat. §§ 332.31-332.45, the motion should be **GRANTED**, and Count III of the Second Amended Complaint should be **DISMISSED with prejudice**.

4. With respect to Count IV, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., the motion should be **DENIED**.

5. With respect to Count V, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., the motion should be **DENIED**.

6. With respect to damages, the motion should be **DENIED**.

DATED: June 4, 2010    *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 18, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 18, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.