UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SAMUEL N. EDEH,                                    Case No. 09-CV-1706 (PJS/FLN)

            Plaintiff,

v.                                                                ORDER

MIDLAND CREDIT MANAGEMENT,
INC.,

            Defendant.

Samuel N. Edeh, pro se.

Michael A. Klutho and Susan E. Gustad, BASSFORD REMELE, PA, for defendant.

Plaintiff Samuel N. Edeh brings this action against defendant Midland Credit
Management, Inc. ("Midland"), alleging that Midland's efforts to collect a debt owed by Edeh
violated various consumer-protection statutes. In January 2010, Edeh and Midland brought
cross-motions for summary judgment. The motions were referred to Magistrate Judge Franklin
L. Noel, who heard oral argument on February 26, 2010. Judge Noel issued a Report and
Recommendation ("R&R") on the motions on June 4, 2010. Docket No. 81. In his R&R, Judge
Noel recommended granting in part and denying in part each of the parties' summary-judgment
motions. Edeh filed objections to Judge Noel's R&R on June 5, 2010 [Docket No. 82], June 7,
2010 [Docket No. 83], June 13, 2010 [Docket No. 90], and June 18, 2010 [Docket No. 95].
Midland filed objections on June 18, 2010 [Docket No. 94], and responded to Edeh's objections
on July 2, 2010 [Docket No. 96].

On March 5, 2010, while the parties' summary-judgment motions were pending before
Judge Noel, Edeh moved to compel certain discovery from Midland. Docket No. 68. Judge

Noel granted the motion in part and denied it in part in an order dated April 20, 2010.  Docket No. 75.  Midland appealed Judge Noel's order on May 4, 2010.  Docket No. 76.  Edeh responded to the appeal on May 17, 2010.  Docket No. 79.

In sum, pending before the Court is Midland's appeal of Judge Noel's April 2010 discovery order and both parties' objections to Judge Noel's June 2010 R&R.  Because the Court's disposition of Midland's appeal of the discovery order depends in large part on the Court's disposition of the parties' objections to the R&R, the Court will first address the latter, and then turn to the former.

## I.  MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard of Review

The Court has reviewed de novo those portions of the R&R to which the parties have objected, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3).  As explained below, the Court generally agrees with the R&R and therefore adopts it in all respects but one.

### B.  Background

The relevant facts are largely undisputed and are set forth in detail in the R&R.  The Court provides only a brief summary here.  On December 30, 2008, Midland called Edeh on his cellular phone, seeking to collect a debt that Edeh now admits he owes.  Midland Ans. to Second Amended Compl. ¶ 9; Second Amended Compl. ¶ 12.  Midland identified the debt as being related to an HSBC credit card, but Edeh did not recognize the debt as his.  He knew that he had defaulted on a Household Bank credit card, but he did not realize that "HSBC" and "Household Bank" were one in the same.  Gustad Aff. Ex. D ("Edeh Dep.") at 15 [Docket No. 46-1].

On December 30, 2008, the same day that he received the call from Midland, Edeh faxed a letter to Midland disputing the debt. Edeh Aff. Exs. B, C-1 [Docket Nos. 41-6, 41-7]. Midland did not verify the debt to Edeh until July 15, 2009. Gustad Aff. ¶ 9, Ex. H [Docket Nos. 46, 46-2]. In the months between Edeh's disputing the debt to Midland and Midland's verifying the debt to Edeh, Midland reported the debt to credit-reporting agencies ("CRAs") on three different occasions. Edeh Aff. Ex. F [Docket No. 41-12]. Edeh also filed disputes directly with the same CRAs. Edeh Aff. Ex. D [Docket No. 41-10]. When the CRAs notified Midland of those disputes, Midland verified Edeh's debt to the CRAs. *Id.*

## C. Discussion

Edeh alleges that Midland violated five different statutes: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (Count I); (2) the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.33 (Count II); (3) the Minnesota Collection Agencies Act, Minn. Stat. §§ 332.31-332.45 (Count III); (4) the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (Count IV); and (5) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x (Count V).

Edeh moved for summary judgment as to liability alone on his claims under the FDCPA, the Rosenthal Act, the Minnesota Collection Agencies Act, and the TCPA (Counts I, II, III, and IV). He did not move for summary judgment on any aspect of his FCRA claim (Count V). Midland moved for summary judgment on all of Edeh's claims and, in the alternative, for summary judgment with respect to various items of damages sought by Edeh.

In his R&R, Judge Noel recommended (1) granting summary judgment to Midland on Counts II (Rosenthal Act) and III (Minnesota Collection Agencies Act); (2) granting summary

judgment to Edeh as to liability on Counts I (FDCPA) and IV (TCPA); (3) denying summary judgment to Midland on Count V (FCRA); and (4) denying Midland's motion as it relates to damages. In other words, Judge Noel recommended that Counts II and III be dismissed; that the Court find Midland liable on Counts I and IV and reserve the question of damages for trial; and that the Court reserve for trial the questions of both liability and damages under Count V. The parties have made numerous objections to the R&R, and the Court addresses those objections in turn.

## 1. Count I: FDCPA

Judge Noel recommended granting summary judgment to Edeh on his claim that Midland violated the FDCPA when it reported the disputed debt to a CRA before verifying the debt to Edeh. Specifically, Judge Noel found that Midland violated 15 U.S.C. § 1692g(b), which provides that if a consumer submits a timely, written dispute to a debt collector, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." R&R at 7.

Midland admits that Edeh submitted a timely, written dispute on December 30, 2008, and that, before verifying the debt to Edeh, Midland reported the debt to the CRAs. But Midland denies that it violated § 1692g(b). Midland points out that § 1692g(b) required only that it "cease collection" of Edeh's debt until the debt was verified to Edeh. According to Midland, it *did* "cease collection" of Edeh's debt. In Midland's view, when it reported Edeh's debt to the CRAs, it was not acting to "collect" that debt in violation of § 1692g(b). Midland Obj. R&R at 8.

In support of its interpretation of § 1692g(b), Midland relies on two unpublished district-court opinions: *Breed v. Nationwide Insurance Co.*, No. 3:05CV-547-H, 2007 WL 1408212 (W.D. Ky. May 8, 2007), and *Jackson v. Genesys Credit Management*, No. 06-61500-CIV, 2007 WL 2113626 (S.D. Fla. July 23, 2007). *Breed* held that reporting a disputed debt to a CRA prior to verifying the debt to the consumer does not constitute debt-collection activity and thus does not violate § 1692g(b). 2007 WL 1408212, at *1. And *Jackson* said, in dicta, that § 1692g(b) "does not appear to prohibit reporting of information to credit reporting agencies." 2007 WL 2113626, at *3. Neither *Breed* nor *Jackson* provided much in the way of analysis, though, and it appears that no court has cited *Breed* or *Jackson* except to disagree with it.

The Eighth Circuit has not ruled on whether reporting a disputed, unverified debt to a CRA qualifies as "collection of the debt" under § 1692g(b). But at least two federal district courts have held, contrary to *Breed* and *Jackson*, that until a disputed debt is verified, " all further attempts to collect on the debt, including . . . any subsequent reports to the credit reporting agencies, violate[] § 1692g(b)." *Semper v. JBC Legal Grp.*, 2005 WL 2172377, *4 (W.D. Wash. Sept. 6, 2005); *see also Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010) (reporting a disputed, unverified debt to a CRA without designating the debt as disputed violates § 1692g(b)). Further, the Sixth Circuit assumed, without deciding, that reporting a disputed, unverified debt to a CRA violates § 1692g(b). *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. App'x. 297, 303 n.5 (6th Cir. 2008).

Both the circuit court in *Purnell* and the district court in *Quale* were influenced by the views of the Federal Trade Commission ("FTC"), which administers the FDCPA.[1]  While recognizing that the FDCPA is "unclear" on the question, the FTC "view[s] reporting to a consumer reporting agency as a collection activity prohibited by § 1692g(b) after a written dispute is received and no verification has been provided."  Letter from John F. LeFevre, Attorney, Federal Trade Commission, Office of the Secretary, to Robert G. Cass, Compliance Counsel, Commercial Financial Services (December 23, 1997), 1997 WL 33791232, at * 1.  The FTC explains, "the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls."  *Id*.

An informal opinion letter from a regulatory agency is not entitled to *Chevron* deference, but it is nevertheless "'entitled to respect'" to the extent that it has the "'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  This Court finds the FTC's reasoning persuasive.  The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.  Consistent with the views of the FTC — and consistent with the views expressed in *Purnell*, *Quale*, and *Semper* — the Court finds that Midland was engaged in "collection of the debt" in violation of § 1692g(b) when it reported Edeh's disputed debt to the CRAs before sending verification of that debt to Edeh.  The Court therefore agrees with Judge Noel that Edeh is entitled to summary judgment as to liability on his FDCPA claim.

---

[1]Although other agencies administer portions of the FDCPA, the FTC is responsible for administering the bulk of the statute's provisions, including those relevant here.  *See* 15 U.S.C. §§ 1692a(1), 1692l(a).

Edeh makes an additional argument with respect to his FDCPA claim that Judge Noel did not address. Edeh argues that Midland violated the FDCPA not only when it reported his disputed debt to a CRA without verifying it to Edeh, but also when Midland, in response to inquiries from the CRAs, verified that debt to those CRAs before first verifying it to Edeh. Edeh Br. S.J. at 2; Edeh Obj. R&R at 4. According to Edeh, each verification by Midland to a CRA was an attempted "collection" in violation of § 1692g(b). In assessing Edeh's claim, it is important to distinguish Midland's *reporting* the debt to the CRAs on its own initiative from Midland's *verifying* the debt after receiving notification from the CRAs that Edeh had disputed the debt. This particular claim of Edeh's involves only the latter.

Edeh cites no authority supporting his interpretation of the FDCPA, and the absence of supporting authority is not surprising. As Midland points out, while the FDCPA governs a debt collector's verification of a disputed debt to a consumer, *see* 15 U.S.C. § 1692g(b), a different statute — the FCRA — governs a debt collector's verification of a disputed debt to a CRA, *see* 15 U.S.C. § 1681s-2(b). The obligations imposed under the two statutes differ significantly. Under the FDCPA, a debt collector who receives a written dispute of a debt from a consumer need not verify the debt at all, but can instead cease efforts to collect the disputed debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). But under the FCRA, a debt collector who receives notification from a CRA that a consumer has disputed a debt must respond to the CRA within a certain period of time. *See* 15 U.S.C. § 1681s-2(b)(1)-(2).

The Court rejects Edeh's argument that a debt collector who, before verifying a disputed debt to a consumer, verifies that debt to a CRA in response to a notification received from the CRA engages in "collection of the debt" in violation of § 1692g(b). No debt collector is required

to *report* a debt to a CRA before verifying that debt to a consumer — and thus, as the Court held above, it is reasonable to view such a practice as a species of debt collection prohibited under § 1692g(b). But a debt collector is required by the FCRA to *verify* a debt to a CRA after the CRA notifies the debt collector that the debt is in dispute. It makes little sense to view such a verification as a prohibited attempt at debt collection. The debt collector is acting not on its own initiative, but in response to a notice sent by the CRA, and the debt collector is responding to that notice not to collect a debt, but to avoid violating the FCRA.

The Court therefore rejects Edeh's argument that Midland violated the FDCPA when, after being notified by the CRAs that Edeh was disputing his debt, Midland verified that debt to the CRAs. If Midland is liable for verifying Edeh's debt to the CRAs, then Midland is liable under the FCRA, not the FDCPA.

### 2. Count II: Rosenthal Act

The Rosenthal Act creates a cause of action under California law for violations of § 1692g(b) of the FDCPA. *Hernandez v. Downey Savs. & Loan Ass'n, F.A.*, 2009 WL 667406, *2 (N.D. Cal. March 13, 2009) (citing Cal. Civ. Code § 1788.17). The Rosenthal Act was enacted by the California Legislature to protect citizens of California from unfair debt-collection practices. *See Pollock v. Bay Area Credit Serv., LLC*, 2009 WL 2475167, at *12 (S.D. Fla. Aug. 13, 2009) ("[T]he Court finds that the [Rosenthal] Act is meant to protect California consumers and not necessarily to prohibit violations by collection agencies with their headquarters located in the state but carrying out actions elsewhere.").

Edeh is a resident of Minnesota, not California. Second Amended Compl. ¶ 6. Further, Midland's December 30, 2008 call to Edeh and its subsequent reports to the CRAs originated in

-8-

Arizona, not California. Gustad Aff. Ex. G [Docket No. 46-2]. The Court agrees with Judge

Noel that because Midland violated the FDCPA when someone in Arizona sent a report to the

CRAs about someone in Minnesota, Midland did not violate California's Rosenthal Act.

In his objection to the R&R, Edeh contends that this case has a sufficient connection to

California to support his claims under the Rosenthal Act. Specifically, Edeh points out that

Midland employees located in California received Edeh's letter requesting verification of the

disputed debt. Edeh Aff. Exs. B, E [Docket Nos. 41-6, 41-11]. According to Edeh, those

employees did nothing in response to those letters — and by doing nothing, he argues, they

violated the FDCPA (and thus the Rosenthal Act). Edeh Obj. at 5.

Edeh's Rosenthal Act claim fails not only because the Rosenthal Act protects

Californians, and Edeh is a Minnesotan, but for an additional reason: The inaction of Midland's

California employees did not violate the FDCPA, and thus did not violate the Rosenthal Act. As

the Court has just explained, the FDCPA does not mandate that a debt collector verify a debt

after receiving a dispute from a consumer. Rather, it requires the debt collector to "cease

collection of the debt" until it has verified the debt to the consumer. 15 U.S.C. § 1692g(b). If a

debt collector wishes, it can permanently cease collection efforts and *never* verify the debt to the

consumer. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997); *accord Smith v.*

*Transworld Sys., Inc.*, 953 F.2d 1025, 1031-32 (6th Cir. 1992).

For that reason, Midland's California-based employees did not violate the FDCPA or the

Rosenthal Act when they failed to verify Edeh's debt. Rather, Midland's Arizona-based

employees violated the FDCPA when they reported that debt to the CRAs before first verifying

the debt to Edeh. Thus, even if the Rosenthal Act was intended to protect non-Californians from

violations of the FDCPA committed by Californians, Edeh was not injured by a violation of the FDCPA committed by a Californian. Midland is entitled to summary judgment on Count II.

### 3. Count III: Minnesota Collection Agencies Act

Judge Noel found, and the Court agrees, that no private right of action exists under the Minnesota Collection Agencies Act. Edeh suggests that it is "not completely settled" that no private right of action exists, and in support of that contention cites *Burgi v. Gurstel Law Firm, P.A.*, Civ. No. 07-4772 (PJS/RLE), 2008 WL 4634984 (D. Minn. Oct. 17, 2008). Edeh Obj. at 7.

Edeh's reliance on *Burgi* is misplaced. In *Burgi*, this Court adopted a magistrate judge's recommendation that a claim under the Minnesota Collection Agencies Act be dismissed because the statute had not been violated. 2008 WL 4634984 at * 10. This Court in no way meant to imply that, had the statute been violated, the plaintiff would have been permitted to recover. That question was never presented to this Court.

Edeh cannot point to any statute or any court decision that suggests that a private right of action exists under the Minnesota Collection Agencies Act. The Court agrees with Judge Noel that Midland is entitled to summary judgment on Count III.

### 4. Count IV: TCPA

The TCPA forbids any person (including a debt collector) from using an automated dialing system to call any telephone number assigned to a cellular telephone service unless the call is made for an emergency purpose or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Further, the TCPA permits a plaintiff to recover up to treble damages if a defendant "willfully or knowingly" violates this prohibition. 47 U.S.C. § 227(b)(3).

Because there is no dispute that Midland placed an automated call to Edeh's cellular phone on December 30, 2008 for non-emergency purposes, Judge Noel found that Edeh was entitled to summary judgment on his TCPA claim. R&R at 8. Judge Noel further found that a factual dispute existed with respect to whether Midland's TCPA violation was willful or knowing. Midland objects to Judge Noel's findings with respect to both liability and willfulness.

Midland first objects to Judge Noel's finding that it violated the TCPA. Midland asserts that, notwithstanding the undisputed fact that it made an automated call to Edeh's cellular phone for a non-emergency purpose, there is a factual dispute over whether Edeh previously consented to receive automated calls to his cellular phone about the disputed debt. Midland Obj. R&R at 9. Midland argues that it obtained Edeh's phone number when it bought Edeh's debt, and that it "reasonably relied upon the seller of the debt to provide the appropriate contact information" for Edeh. Gustad Aff. Ex. B at 14 [Docket No. 46-1].

That is beside the point. Midland's call to Edeh's cellular phone was permissible only if it was made "with [Edeh's] prior *express* consent." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). "Express" means "explicit," not, as Midland seems to think, "implicit." Midland was not permitted to make an automated call to Edeh's cellular phone unless Edeh had previously said to Midland (or at least to Midland's predecessor in interest) something like this: "I give you permission to use an automatic telephone dialing system to call my cellular phone." Midland has no evidence that Edeh gave such express consent. In fact, uncontroverted evidence, in the form of Edeh's affidavit, shows that Edeh did not consent to receive automated calls on his cellular phone. Edeh Aff. ¶ 10 [Docket No. 41-3]. The Court therefore overrules Midland's objection to the R&R as it relates to TCPA liability.

-11-

Midland also objects to Judge Noel's finding that issues of fact remain with respect to whether Midland's TCPA violation was willful or knowing. Midland is correct that there is little evidence that its violation was willful or knowing, but that may be because Midland has strenuously resisted permitting Edeh to take any discovery on this issue. *See generally* Midland Obj. Order to Compel [Docket No. 76]. Midland cannot, on the one hand, block any discovery into the question of whether it acted willfully, and then, on the other hand, ask the Court to dismiss this action because Edeh has not discovered any evidence that it acted willfully.

### 5. Count V: FCRA

Edeh alleges that Midland violated the FCRA by failing to reasonably investigate Edeh's debt when it was informed by the CRAs that Edeh disputed it. 15 U.S.C. § 1681s-2(b). As the Court has explained, a debt collector's obligation under the FCRA to verify a debt after receiving notice of a dispute from a CRA is distinct from a debt collector's obligation under the FDCPA to verify a debt (or cease collection efforts) after receiving a dispute directly from a consumer. Section 1681s-2(b) of the FCRA requires a furnisher of credit information (in this case, Midland), on receiving notice from a CRA that a consumer has disputed a debt, to investigate the dispute, to report the results of the investigation to the CRA, and, if the furnisher concludes that the disputed debt is inaccurate, incomplete, or unverifiable, to take certain additional remedial measures. 15 U.S.C. § 1681s-2(b)(1). The furnisher's investigation must be "reasonable." *See Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp. 2d 853, 858 (D. Minn. 2005).

As a general rule, whether an investigation is "reasonable" under the FCRA is a question of fact for the jury. *See Crabill v. Trans Union LLC*, 259 F.3d 662, 664 (7th Cir. 2001). Judge Noel found that the general rule applied in this case and therefore recommended denying

Midland's summary-judgment motion on Edeh's FCRA claim.  (Edeh did not move for summary judgment on his FCRA claim.)

Midland objects to Judge Noel's recommendation.  Midland points out that Edeh admits that he owes the full amount of the debt that Midland verified to the CRAs.  According to Midland, an investigation that results in the furnisher verifying *accurate* information about the debt is necessarily "reasonable" for purposes of § 1681s-2(b).  Midland S.J. Reply at 3; Midland Obj. R&R at 3.

As best as the Court can determine, Midland's argument has been addressed by only one circuit.  In *Chiang v. Verizon New England Inc.*, the First Circuit held that "a § 1681s-2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover."  595 F.3d 26, 29-30 (1st Cir. 2010).  The *Chiang* court relied heavily on *DeAndrade v. Trans Union LLC*, in which the First Circuit, joining the majority of federal courts that have addressed the question, held that a consumer bringing a claim under a different provision of the FCRA — § 1681i(a) — must prove "that the reported information was in fact inaccurate."  523 F.3d 61, 67 (1st Cir. 2008); *see also Kuehling v. Trans Union LLC*, 137 Fed. App'x. 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA — either § 1681e(b) *or* § 1681i(a)(1)(A)." (emphasis in original)); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (the determinative question for liability was "whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation.").  Section 1681i(a) requires that, when a consumer notifies a CRA of a dispute regarding "the completeness or

accuracy of any item of information contained in [the] consumer's file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a)(1)(A).

In *Chiang*, the First Circuit held that, like consumers bringing claims against CRAs for failure to conduct a reasonable reinvestigation under § 1681i(a), consumers bringing claims against furnishers for failure to conduct a reasonable investigation under § 1681s-2(b) must show that the information being challenged was inaccurate. The First Circuit reasoned that it would make little sense to require more of § 1681i(a) plaintiffs than § 1681s-2(b) plaintiffs: "Given the considerable overlap between a CRA's responsibility to reinvestigate and a furnisher's duties under § 1681s-2(b), it would be inconsistent for plaintiffs to bear a weightier burden in suits against a CRA under § 1681i(a) than in suits against furnishers under § 1681s-2(b)." 595 F.3d at 37.

In addition, the First Circuit held that allowing plaintiffs to recover under either § 1681i(a) or § 1681s-2(b) without showing that the challenged information was inaccurate would be inconsistent with the text and purpose of the FCRA. As the First Circuit said, "'The FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information.'" 595 F.3d at 37-38 (quoting *DeAndrade*, 523 F.3d at 67) (emphasis in original). Congress did not impose the obligation on furnishers to conduct reasonable investigations under § 1681s-2(b), or on CRAs to conduct reasonable reinvestigations under § 1681i(a), because reasonable investigations in and of themselves benefit consumers. Rather, Congress made clear in the statute that the purpose of the investigation (or reinvestigation) was to identify — and protect the consumer from — information that was incomplete or inaccurate. If

-14-

the CRA or furnisher conducts an investigation, that investigation results in verification of the completeness and accuracy of the challenged information, and the challenged information *is*, in fact, complete and accurate, then neither § 1681i(a) nor § 1681s-2(b) has been violated. 595 F.3d at 37-38.

Finally, as the First Circuit pointed out, "it is 'difficult to see how a plaintiff could prevail on a claim for damages' based on an unreasonable investigation of disputed data 'without a showing that the disputed information . . . was, in fact, inaccurate.'" *Id.* at 38 (quoting *DeAndrade*, 523 F.3d at 67). In this case, for example, there is no question that the information about Edeh's debt that was verified by Midland was complete and accurate. Edeh has not even hinted as to how he was harmed by Midland giving *truthful* information to the CRAs.

This Court agrees with the First Circuit and holds that, because Edeh cannot show that the information about his debt that was verified by Midland was inaccurate, Edeh cannot recover from Midland under § 1681s-2(b). The Court sustains Midland's objection to the R&R's recommendation regarding Edeh's FCRA claim. Midland is entitled to summary judgment on Count V.

### 6. Emotional-Distress Damages

Midland made an offer of judgment under Fed. R. Civ. P. 68 in which it offered to pay Edeh a total of $2501 (plus reasonable costs) for his FDCPA and TCPA claims. Gustad Aff. Ex. J [Docket No. 46-2]. The Rule 68 offer did not allocate the $2501 between the two claims. According to Midland, though, the Rule 68 offer was intended to give Edeh the maximum statutory damages available under the FDCPA ($1000) plus the maximum statutory damages available under the TCPA ($1500 — i.e., $500 trebled). Midland argues that, because Edeh

cannot recover more on his FDCPA and TCPA claims than Midland has offered, those claims are now moot. *See Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 562 (D. Minn. 2003) ("[M]any courts have held that a valid offer of judgment that would satisfy a plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction.").

Judge Noel disagreed with Midland. Judge Noel pointed out that the FDCPA permits a consumer to recover actual damages *plus* additional damages of up to $1000. 15 U.S.C. § 1692k(a). Judge Noel further found that Edeh had a viable claim for actual damages for emotional distress. Because Edeh could recover more than $1000 under the FDCPA, as well as up to $1500 under the TCPA, the Rule 68 offer of $2501 did not, in fact, represent Edeh's maximum possible recovery on the two claims combined. The Rule 68 offer therefore did not render those claims moot. R&R at 9.

In objecting to Judge Noel's conclusion, Midland argues that Edeh's evidence of his emotional distress is, as a matter of law, insufficient to support an award of emotional-distress damages under the FDCPA. Midland Obj. R&R at 11; *see also* Midland Br. S.J. at 16-19. In support of its argument, Midland points to two recent cases from this District rejecting claims for emotional-distress damages under the FCRA.[2] In *McKinley v. CSC Credit Services, Inc.*, Judge Montgomery found that the plaintiff's deposition testimony that he suffered from "insomnia, distraction, anger, a short-temper, feelings of low self-worth, disappointment, and disillusionment," supported by affidavits from four people close to him, "does not identify and

---

[2]Midland argues implicitly that the standard for emotional-distress damages is the same under the FDCPA and the FCRA. Midland Obj. R&R at 5. Edeh does not argue otherwise, and so, for present purposes, the Court will assume that Midland is correct.

describe severe emotional distress that warrants an award of actual damages." Civ. No. 05-2340 ADM/JJG, 2007 WL 1412555, at *5 (D. Minn. May 10, 2007). In *Zean v. Unifund CCR Partners*, Judge Frank concluded that plaintiff's claim for emotional-distress damages could not survive summary judgment when the only evidence of the claimed emotional distress was plaintiff's deposition testimony that he suffered occasional sleeplessness, smiled less frequently, and could not fulfill his perceived role as the family breadwinner. Civ. No. 08-1091 (DWF/AJB), 2009 WL 2461723, *3-4 (D. Minn. Aug. 10, 2009).

Midland also points to several cases in which awards for emotional distress under the FCRA have been upheld on a showing that the defendant's conduct was especially egregious and that the plaintiff's distress was correspondingly severe. For example, in *Bakker v. McKinnon*, the Eighth Circuit upheld a total of $1500 in compensatory damages under the FCRA where the debt collector had threatened a plaintiff's livelihood and had alleged that the plaintiff had been involved in child molestation. 152 F.3d 1007 (8th Cir. 1998). In *Sloane v. Equifax Information Services, LLC*, the defendant CRA had for months failed to follow its own procedures for helping identity-theft victims, and its ongoing failure to correct the plaintiff's credit report caused her marriage to crumble. 510 F.3d 495 (4th Cir. 2007). On appeal, the Fourth Circuit reduced the damages in *Sloane* from $245,000 to a maximum of $150,000. 510 F.3d at 506-07. Midland suggests, based on cases such as *Bakker* and *Sloane*, that emotional-distress damages are available only to plaintiffs who can make a showing of severe emotional distress.

That is clearly not the law. The FDCPA authorizes recovery of "*any* actual damage" sustained by a consumer as a result of a debt collector's violation of the Act. 15 U.S.C. § 1692k(a)(1) (emphasis added). A consumer who has suffered emotional distress has suffered

-17-

"actual damage," even if the emotional distress was not severe. Indeed, the Eighth Circuit has upheld awards for "mere mental pain and anxiety" under the FCRA where the plaintiff has alleged that he has suffered "only loss of sleep, nervousness, frustration and mental anguish" over an incorrect credit report. *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976). And other circuits have held that a plaintiff's testimony, standing alone, can provide sufficient evidence to support a claim for emotional-distress damages, provided that the plaintiff can reasonably explain the circumstances of the injury and not rely merely on conclusory statements. *United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th Cir. 1992); *Bach v. First Union Nat'l Bank*, 149 Fed. App'x. 354, 361 (6th Cir. 2005). Further, in the employment-discrimination context, the Eighth Circuit has held that a plaintiff's testimony offering "specific facts as to the nature of his claimed emotional distress and the causal connection to the employer's alleged violations," standing alone, is enough for an emotional-distress damages claim to survive summary judgment. *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 891 (8th Cir. 2008) (internal quotation omitted).

Edeh testified in his deposition that his emotional distress was caused not only by the phone call (which did not violate the FDCPA), and not only by Midland's months-long refusal to communicate with him (which also did not violate the FDCPA), but by Midland's reporting of his disputed, unverified debt to the CRAs (which did violate the FDCPA). Edeh Dep. 42-43. Midland's conduct caused him frustration and worry and disturbed his sleep. Edeh Dep. 43. Edeh testified that he considers Midland's conduct (and the resulting litigation) one of the top three stressors in his life. Edeh Dep. 47-48. He explained that his stress was exacerbated by Midland's unresponsiveness in the face of his dogged efforts to correct what he at that time

believed to be erroneous information.  According to Edeh, Midland "won't even respond to anything.  Everything was being done out of sight . . . .  So when you know that they are in violation, you are trying to resolve an issue, nobody's responding to you, so that makes you worry about it more."  Edeh Dep. 56-57.

The question of whether Edeh should be permitted to seek damages under the FDCPA for emotional distress is very close.  The case law does not provide a bright-line rule for when a jury may award emotional-distress damages, but Edeh's claim does not differ much from the claim that survived in *Millstone* — and, as noted, § 1692k(a)(1) permits recovery for "*any* actual damage," not just severe damage.  Moreover, emotional distress is, by its nature, extremely subjective, and often the only evidence of emotional distress will be the testimony of the distressed person.  In addition, the record in this case is unclear, as neither Edeh nor Midland made much effort to clarify to what extent Edeh's emotional distress was attributable to Midland's violation of the FDCPA, and to what extent Edeh's emotional distress was attributable to Midland's violation of the TCPA or to other conduct that, while upsetting, was not unlawful.  Finally, the Court recognizes that Edeh is proceeding pro se and has not been trained on how to develop and present a record.

In light of all of these considerations, the Court cannot hold that no reasonable jury could award Edeh damages for emotional distress.  Any such damages are likely to be very small — and, indeed, after hearing Edeh's evidence, the Court may direct a verdict for Midland.  At this

point, however, the Court accepts Judge Noel's recommendation and overrules Midland's objection.[3]

That said, the Court agrees with Midland that Edeh cannot, on the one hand, block any discovery into his medical records, and then, on the other hand, rely on his medical records in opposing Midland's motion for summary judgment. If, in fact, Edeh voluntarily submitted some of his medical records in support of his claim for emotional-distress damages, then it would seem that Midland should be able to discover all of Edeh's medical records that relate to his emotional well-being. But the Court leaves this matter to Judge Noel to decide in the first instance.

## II. EDEH'S MOTION TO COMPEL

### A. Standard of Review

A magistrate judge's ruling on a nondispositive pretrial matter may be reversed only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Chase v. Comm'r*, 926 F.2d 737, 740 (8th Cir. 1991) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is "contrary to law" when it fails to apply (or misapplies) relevant statutes, case law, or rules of procedure. *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1092 (N.D. Iowa 2008)).

---

[3]Edeh objects to the R&R on the grounds that it does not find the Rule 68 offer of judgment invalid. Edeh Obj. R&R at 7-8. Because the Court concludes that the offer of judgment, even if valid, has no effect on the litigation, the Court need not rule on the offer's validity.

### B. Objection

As is relevant here, Edeh moved to compel responses to six discovery requests:[4]

> (1) a description of the procedures that Midland used from the start
> of 2004 to the present to avoid violating the FDCPA and TCPA,
> and information related to those procedures
> (Interrogatory No. 8 (first set of discovery));

> (2) copies of policy manuals, procedure manuals, and other
> documents provided to Midland employees during the years 2005
> through 2009 that are related to the FDCPA or the TCPA (Request
> for Production No. 11 (first set of discovery));

> (3) copies of policy manuals, procedure manuals, and other
> documents provided to Midland employees during the years 2005
> through 2009 that are related to the FCRA (Request for Production
> No. 2 (fourth set of discovery));

> (4) information about all lawsuits filed against Midland, and all
> court judgments and civil or administrative penalties or sanctions
> levied against Midland, since 1994 for violations of the FCRA
> (Interrogatory No. 1 (fourth set of discovery));[5]

> (5) information about all lawsuits filed against Midland, and all
> court judgments and civil or administrative penalties or sanctions
> levied against Midland, since 1994 for violations of the FDCPA,
> the Minnesota Fair Debt Collection Practices Act,[6] the Rosenthal

---

[4]Edeh's motion to compel and Judge Noel's April 20 order addressed a total of ten
discovery requests. The Court does not discuss the four requests that are unrelated to Midland's
objection to Judge Noel's order.

[5]This interrogatory appears to be identical in substance to Interrogatory 1 of Edeh's third
set of discovery. Midland argued before Judge Noel that Edeh had moved to compel a response
to the interrogatory only with respect to his third set (and not his fourth set) of discovery,
Midland Br. Opp. Compel at 6 n.3, but because the two requests ask for the same information,
the distinction is of no consequence.

[6]The Court does not know what to make of Edeh's references in various discovery
requests to the "Minnesota Fair Debt Collection Practices Act." Edeh Aff. Ex. A at 4 [Docket
No. 69-1] (Interrogatory Nos. 16 and 18 (first set of discovery)). There is no such thing as a

(continued...)

Act, or the TCPA, or for invasions of consumers' privacy or
financial privacy (Interrogatory No. 16 (first set of discovery)); and

(6) all publications or documents Midland has received during the
past 48 months from any debt-collection trade organization, the
FTC, or the Federal Communications Commission ("FCC") that
address compliance with the FDCPA, the Minnesota Fair Debt
Collection Practices Act, the Rosenthal Act, the TCPA, "or the
invasions of consumer's personal privacy and financial privacy"
(Interrogatory 18 (first set of discovery)).

Edeh Aff. Exs. A, B [Docket Nos. 69-1, 69-2].

Judge Noel granted Edeh's motion to compel with respect to these six requests insofar as

they relate to the years 2006 through 2008 and denied Edeh's request for costs incurred in

connection with the motion. Docket No. 75. Midland objects to all six of these requests on the

grounds that they are irrelevant to the claim or defense of any party. Midland further objects to

Interrogatory Nos. 16 and 18 on the grounds that production of the requested materials would be

burdensome.

When Judge Noel issued his order on April 20, 2010, this Court had not yet ruled on the

parties' summary-judgment motions, which were then pending before Judge Noel. Judge Noel's

order was neither clearly erroneous nor contrary to law at the time that he entered it. But in light

of the Court's summary-judgment rulings, certain discovery that would have been permitted

under Judge Noel's April 20 order is no longer relevant. Because a party may discover only

---

[6](...continued)
"Minnesota Fair Debt Collection Practices Act." Perhaps Edeh meant to refer to the Minnesota
Collection Agencies Act, under which he brought a claim, and which incorporates the provisions
of the federal FDCPA. Minn. Stat. § 332.37(12). Ultimately, however, the issue of what Edeh
meant by his reference to the "Minnesota Fair Debt Collection Practices Act" is of no
consequence.

relevant evidence, *see* Fed. R. Civ. P. 26(b)(1), the Court sustains Midland's objection to the April 20 order insofar as that order compels production of material that is no longer relevant.

The Court has granted summary judgment to Edeh on his claims under the FDCPA and TCPA and dismissed his other claims. Only two issues remain to be tried: First, what actual damage, if any, did Edeh suffer on account of the violation of the FDCPA? Second, was Midland's violation of the TCPA willful or knowing?

Midland contends that Edeh cannot prove a willful or knowing violation because he lacks evidence that Midland actually knew that it was calling Edeh on his cellular phone. Putting aside the fact that Midland has blocked discovery on that very issue, "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Therefore, Edeh is entitled to discover evidence that is relevant to whether Midland's violation of the TCPA was reckless.

Interrogatory No. 1 and Request for Production No. 2 of Edeh's fourth set of discovery pertain solely to the FCRA, and therefore do not relate to either of the two remaining issues. Edeh Aff. Ex. B at 5-6 [Docket No. 69-2]. Accordingly, the Court vacates the April 20 order as that order relates to those requests.

Interrogatory No. 8 of Edeh's first set of discovery seeks information about Midland's procedures to avoid committing FDCPA and TCPA violations. Edeh Aff. Ex. A at 3 [Docket No. 69-1]. To the extent that this interrogatory seeks information about the FDCPA, the interrogatory is not relevant to the remaining issues, and therefore the Court vacates the April 20 order insofar as that order relates to the FDCPA portion of Interrogatory No. 8. But information

about what Midland's procedures required it to do to avoid violating the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless. Accordingly, the Court overrules Midland's objection to the April 20 order insofar as that order relates to the TCPA portion of Interrogatory No. 8.

Request for Production No. 11 of Edeh's first set of discovery seeks "policy manuals, procedure manuals, or other documents" that were distributed to Midland employees and that "reference, constitute or duplicate" the FDCPA or TCPA. Edeh Aff. Ex. A at 6 [Docket No. 69-1]. To the extent that this request seeks information about the FDCPA, the request is not relevant to the remaining issues, and therefore the Court vacates the April 20 order insofar as that order relates to the FDCPA portion of Request for Production No. 11. But information about what Midland did and did not tell its employees about the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless. Accordingly, the Court overrules Midland's objection to the April 20 order insofar as that order relates to the TCPA portion of Request for Production No. 11.

Interrogatory No. 16 of Edeh's first set of discovery seeks information about all lawsuits filed, and all court judgments and civil or administrative sanctions issued, against Midland for alleged violations of the FDCPA, the Minnesota Fair Debt Collection Practices Act, the Rosenthal Act, or the TCPA, or for "invasions of consumer's personal privacy and financial privacy." Edeh Aff. Ex. A at 4 [Docket No. 69-1]. To the extent that this interrogatory seeks information about anything not related to the TCPA, the interrogatory is not relevant to the remaining issues, and therefore the Court vacates the April 20 order insofar as that order relates to the portions of Interrogatory No. 16 that address the FDCPA, the Minnesota Fair Debt

Collection Practices Act, the Rosenthal Act, and invasions of consumers' personal and financial privacy. But information about whether Midland has previously been sued, sanctioned, or found liable for violating the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless. Accordingly, the Court overrules Midland's objection to the April 20 order insofar as that order relates to the TCPA portion of Interrogatory No. 16.

Finally, Interrogatory No. 18 of Edeh's first set of discovery seeks information about documents or publications Midland has received from debt-collection trade organizations, the FTC, or the FCC that address compliance with the FDCPA, the Minnesota Fair Debt Collection Practices Act, the Rosenthal Act, the TCPA, "or the invasions of consumer's personal privacy and financial privacy." Edeh Aff. Ex. A at 4 [Docket No. 69-1]. To the extent that this interrogatory seeks information about anything not related to the TCPA, the interrogatory is not relevant to the remaining issues, and therefore the Court vacates the April 20 order insofar as that order relates to the portions of Interrogatory No. 18 that address the FDCPA, the Minnesota Fair Debt Collection Practices Act, the Rosenthal Act, and invasions of consumers' personal and financial privacy. But information about what debt-collection trade organizations, the FTC, or the FCC may have counseled Midland to do to comply with the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless. Accordingly, the Court overrules Midland's objection to the April 20 order insofar as that order relates to the TCPA portion of Interrogatory No. 18.

The Court finds that neither Interrogatory No. 16 nor Interrogatory No. 18 — as narrowed by the Court — is unduly burdensome. The Court notes that Midland may be able to avoid all discovery related to the TCPA simply by making a proper offer of judgment under Rule 68

limited just to the TCPA claim. If Midland decides on this course of action, the Court urges Midland to research carefully the requirements of Rule 68 — and not to lard its Rule 68 offer with ambiguous or extraneous provisions — so as to avoid another round of litigation over the adequacy of its Rule 68 offer.

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Court OVERRULES the third amended objection of plaintiff Samuel N. Edeh [Docket No. 95]; OVERRULES IN PART and SUSTAINS IN PART the objection of defendant Midland Credit Management, Inc. [Docket No. 94]; and ADOPTS IN PART Judge Noel's Report and Recommendation [Docket No. 81] to the extent that it is consistent with this order. Accordingly, IT IS HEREBY ORDERED THAT:

1.  The summary-judgment motion of defendant Midland Credit Management, Inc. [Docket No. 43] is GRANTED IN PART and DENIED IN PART as follows:

    a.  With respect to Count II, alleging violations of the California Rosenthal Fair Debt Collection Practices Act, the motion is GRANTED. Count II is DISMISSED WITH PREJUDICE AND ON THE MERITS.

    b.  With respect to Count III, alleging violations of the Minnesota Collection Agencies Act, the motion is GRANTED. Count III is DISMISSED WITH PREJUDICE AND ON THE MERITS.

    c.  With respect to Count V, alleging violations of the Fair Credit Reporting Act, the motion is GRANTED. Count V is DISMISSED WITH PREJUDICE AND ON THE MERITS. And

        d.      The motion is DENIED in all other respects.

2.      The motion for partial summary judgment of plaintiff Samuel N. Edeh [Docket No. 41] is GRANTED IN PART and DENIED IN PART as follows:

        a.      With respect to Count I, alleging violations of the Fair Debt Collection Practices Act, the motion is GRANTED insofar as that count alleges that defendant violated the Fair Debt Collection Practices Act by reporting a disputed debt to credit-reporting agencies without first verifying the debt to plaintiff.

        b.      With respect to Count IV, alleging violations of the Telephone Consumer Protection Act of 1991, the motion is GRANTED insofar as that count alleges that defendant violated the Telephone Consumer Protection Act of 1991 by contacting plaintiff on his cellular phone by an automatic dialing system for non-emergency purposes and without plaintiff's prior express consent.  And

        c.      The motion is DENIED in all other respects.

IT IS HEREBY FURTHER ORDERED THAT the Court VACATES IN PART and AFFIRMS IN PART Judge Noel's order [Docket No. 75] regarding plaintiff Samuel N. Edeh's motion to compel discovery [Docket No. 68] as follows:

1.      With respect to Interrogatory Nos. 8, 16, and 18 and Request for Production No. 11 of plaintiff's first set of discovery:

        a.      The order is VACATED to the extent that plaintiff seeks production of information related to the Fair Debt Collection Practices Act, the

Minnesota Fair Debt Collection Practices Act, the California Rosenthal

Fair Debt Collection Practices Act, or the invasion of consumers' personal

or financial privacy. And

b. The order is AFFIRMED to the extent that plaintiff seeks production of

information related to the Telephone Consumer Protection Act of 1991.

2. With respect to Interrogatory No. 1 and Request for Production No. 2 of plaintiff's

fourth set of discovery, the order to compel is VACATED. And

3. The order is AFFIRMED in all other respects.


Dated: September 29, 2010                           s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge