**SAMUEL N. EDEH**          718 W. Center St. #6 Rochester MN 55902

---

September 30, 2010

The Honorable Patrick J. Schiltz           Edeh vs. MCM, Court File
United States District Court               No. 09-CV-1706 (PJS/FLN)
774 Federal Building
St. Paul, MN 55101

**Letter Requesting Leave Of Court To Submit Motion For Reconsideration Of Order Of September 29, 2010 (Doc. No. 109)**

Dear Judge Schiltz:

With respect to the FCRA claim, the Order of September 29, 2010 ("Order") is perfectly on point to the extent it relied on the First Circuit's opinion to reiterate that information reported on credit reports should be "accurate" and "complete." But there is a third and necessary factor – which is that the reported information must be "verifiable." What does "verifiable" mean in the context of the FCRA investigation process? It appears that courts considering 1681s-2b have not exhaustively addressed this question - if they have addressed it at all - making it all the more compelling for this court to lead the way and reexamine matters in light of the meaning of this necessary yet oft ignored third criteria.

The rationale is that, if at all possible, statutes should be interpreted in such a way ***not*** to make a statutory word or text void or superfluous. The canons of interpretation dictate that courts give effect to *every* word in the statute.[1] Here, the statutory text clearly states that a furnisher cannot verify information that it has not determined to be "verifiable." Section 1681s-2b(1)(E) explicitly states that "if an item of information disputed by a consumer is found to be inaccurate or incomplete *or cannot be verified* after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly– (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." [Emphasis added]

When MCM responded to the notice of dispute, it was yet to receive the "validating media" with which to properly verify the disputed information. Without the "validating media," MCM could not lawfully verify the disputed information. What it should have done, according to 1681s-2b(1)(E)(ii), is to

---

[1] See *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-77 (2003) ("Absent a statutory text or structure that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous."); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992) (declining to adopt construction that would violate "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"); *D.A.B.E., Inc. v. Toledo-Lucas City Bd. Of Health*, 773 N.E.2d 536, 541 (2002) ("[A]ll words should have effect and no part should be disregarded."). *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (stating that Court is loathe to interpret statute in manner that renders part of statute superfluous); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *United States v. Alaska*, 521 U.S. 1, 59 (1997)

"delete that item of information." Of course, after MCM has received the "validating media" and has used it to conduct proper investigation, it can then begin to report and verify the debt to the CRAs. Congress evidently allowed for these scenarios by differentiating b/w temporarily "deleting" the disputed item in situations where for e.g. the furnisher could not verify the item within the due date to respond to the notice of dispute (as in 1681s-2b(1)E(ii)) and permanently "blocking" the item where for e.g. the item is no longer verifiable (as in 1681s-2b(1)E(iii)).[2] This plain reading of the statute harmonizes with Congress' intent to ensure that furnishers adopt proper procedure to conduct reasonable investigation of disputes. Relying on the First Circuit's statutory construction analysis is misplaced given the "strained" analysis of an otherwise unambiguous or explicit statutory text.

If indeed MCM's investigation is not "beyond question" as Judge Noel pointed out in his R&R, could it be said in all truthfulness that MCM fulfilled its duty to the CRAs to perform reasonable investigation? Section 1681s-2b is concerned with the furnisher's duties to the CRAs - and not necessarily to the consumer - to perform reasonable upon notice of dispute. Whether there was "harm" to the consumer and whether the disputed information turned out to be accurate is after the fact and is not the primary issue here. As Judge Noel alluded, consumers can recover punitive damage under the FCRA even where there is no actual damage. The overriding goal is not to reward the consumer but to help ensure that furnishers adopt proper investigation procedure and fulfill their duties to the CRAs.

The Order is also erroneous to the extent that it held that MCM did not violate the FDCPA when it verified the debt to the CRAs. With limited exceptions (for e.g. see section 805(c) of the FDCPA), the FDCPA *explicitly* prohibits a debt collector from engaging in *any* communication in furtherance of collecting the debt until it has first provided requested validation. Reporting or verifying the debt to the CRAs serves one purpose only which is to keep the unsubstantiated debt on the credit reports and coerce the consumer to pay. There is no FDCPA-FCRA conflict here as the Order seems to imply. Rather the two statutes strengthen one another to the extent that the FCRA allows - in fact requires - the furnisher to simply "delete the item of information" if the furnisher is unable to verify it by the due date to respond to the notice of dispute. Again, the debt collector has every right to start reporting the item after it has obtained appropriate validating media and has conducted proper investigation.

Unscrupulous debt collectors simply want to cut corners and avoid their responsibility to validate the debt while at the same time continuing communication in furtherance of collecting the debt. They cannot have it both ways; either they completely stop all communication (except as provided under the statute) or they should simply provide validation and continue collection attempts.

In sum, upholding the Order as framed renders part of the statutory texts redundant, extraneous or irrelevant. Hence, this letter requesting leave of court to submit a motion for reconsideration.

Sincerely,

Samuel Edeh

---

[2] This reasoning is well developed in the seminal FCRA case, *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429-31 (4th Cir. 2004). Here, the Fourth Circuit held that the FCRA required MBNA to conduct a reasonable investigation, which "clearly requires some degree of careful inquiry." MBNA's investigation was not deemed reasonable because MBNA had failed to consult any underlying legal documents. If the legal documents were not available, MBNA should have informed the CRAs that it could not *conclusively* verify Ms. Johnson's legal obligation to pay the balance of the debt.